## UNITED STATES v. RAYNO et al.

### No. 3862.

Circuit Court of Appeals, First Circuit.

June 14, 1943.

---

Wilma C. Martin, Atty., Department of Justice, of Washington, D. C., Norman M. Littell, Asst. Atty. Gen., and Vernon L. Wilkinson, Atty., Department of Justice, of Washington, D. C., and Alexander Murchie, U. S. Atty., of Concord, N. H., for appellant.

Robert W. Upton, of Concord, N. H., for appellees.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal by the United States from a judgment of the United States District Court for the District of New Hampshire in a condemnation proceeding awarding $12,725 as compensation for 12.3 acres of pasture land situated in the town of Andover. The land was condemned and taken to provide material needed for the construction of a flood-control dam located about three and a half miles away at Franklin Falls on the Pemigewasset River.

This dam was constructed under the jurisdiction of the War Department under the direction of the Secretary of War and the supervision of the Chief of Engineers, as authorized by the Flood Control Act of 1936 (49 Stat. 1570, 1572) as amended in 1938 (52 Stat. 1215, 1216), 33 U.S.C.A. § 701a et seq., and, in 1937, pursuant to this authorization civil engineers employed by the War Department made a geological reconnaissance of all lands within a radius of five miles of the dam site. The purpose of this investigation was to find out whether there was available in the neighborhood a sufficient supply of impervious earthen material suitable for the construction of the core and blankets of a dam of rolled earth fill construction. It was found that in the vicinity of the dam there were extensive deposits of glacial till or hardpan, a material which when well compacted is almost as impervious as cement, and that the best deposit, both as to quality and accessibility, was on the land condemned. Consequently the specifications for the dam, which were given out for bids on July 15, 1939, called for a rolled earth fill structure, the core and blankets of which were to be built of material taken from the land condemned herein. The contract for the construction of the dam was awarded in August, 1939, and construction was begun soon thereafter.

This is the background for the instant proceeding which was instituted on September 28, 1939, by the United States Attorney for the District of New Hampshire acting under the instructions of the Attorney General and at the request of the Secretary of War. In it condemnation of the land is sought under 33 U.S.C.A. § 591. On the day the petition for condemnation was filed the court entered an order giving the United States immediate possession pursuant to 33 U.S.C.A. § 594. Thereafter three commissioners were appointed in accordance with the state procedure for the condemnation of land, and these commissioners, after viewing the premises and hearing testimony, appraised the land at $3,220. Both the United States and Rayno appealed from this appraisal and asked for a jury trial. Upon such a trial Rayno obtained a verdict for $7,250 and thereupon the United States Attorney moved that this verdict be set aside as excessive. The court below, saying "I believe that the jury based their award on the gain to the taker and not the loss to the owner", granted the motion and ordered a new trial unless the owner would agree to accept and the Government would agree to pay $4,000 with

interest. Rayno declining, there was another jury trial and this time the verdict was for $12,725. Again the United States Attorney moved that the verdict be set aside as excessive but this time the court denied the motion and ordered judgment on the verdict. From the judgment entered pursuant to this order the United States took this appeal alleging as grounds therefor errors in the admission of evidence and in the failure to charge as requested, as well as error in failing to grant the motion to set aside the verdict.

The evidence adduced at the second jury trial indicates that the 12.3 acres of land taken comprised about half the pasture land of a 63.7 acre dairy farm. This entire farm was purchased for Rayno by his mother in 1928 for $1,400 and she, upon being reimbursed for the price, conveyed it to him in 1933. During the years that Rayno owned the entire farm it appears that he spent about $1,000 in improving it, but it does not appear that he ever spent anything in improving the part devoted to pasturage. There was evidence that at the time of the taking the entire farm was worth $2,500 to $2,700 for agricultural or residential purposes and that after the taking the part that remained was worth, for the same purposes, from $1,200 to $1,300. On the basis of this testimony the United States Attorney contends that in reason the compensation awarded cannot exceed $1,500.

Counsel for the landowner takes a different view. He contends that "The sum required to be paid the owner does not depend upon the uses to which he has devoted his land but is to be arrived at upon just consideration of all the uses for which it is suitable", (Olson v. United States, 292 U.S. 246, 255, 54 S.Ct. 704, 708, 78 L.Ed. 1236) and that, although the land taken had been used by Rayno only as a pasture, its most valuable use was the use to which the Government put it, that is, as a gravel pit. On this theory he was allowed over the objection of the United States Attorney to introduce evidence of the price per cubic yard paid for glacial till or hardpan in situ in and around Franklin and Andover at and before the time of the taking and of the quantity of that material on the land condemned. From these figures it would appear that the verdict of the jury is within the evidence. The first question for our consideration is the admissibility of the above testimony.

■ The Supreme Court has recently said that "The Fifth Amendment of the Constitution provides that private property shall not be taken for public use without just compensation. Such compensation means the full and perfect equivalent in money of the property taken. The owner is to be put in as good position pecuniarily as he would have occupied if his property had not been taken." United States v. Miller, 317 U.S. 369, 373, 63 S.Ct. 276, 279, 87 L.Ed. ——. But that court in the same case refrained from attempting to state any specific formula of general application by which to determine an owner's indemnity. It said that the courts early adopted the concept of market value, that is, what a willing buyer would pay and a willing seller accept in cash for the property at the time of the taking, but it left determination of the proper elements for consideration in arriving at this figure to decision in specific cases as they arise.

Decided cases, however, indicate the answer to the question raised by the United States Attorney's objection to the testimony of the price per cubic yard and the quantity of hardpan on the property.

■■ It has long been established that one of the elements or factors to be considered in cases of this sort is all the available uses which might be made of the property. See Boom Co. v. Patterson, 98 U.S. 403, 408, 25 L.Ed. 206; United States v. Chandler-Dunbar Water Power Co., 229 U.S. 53, 81, 33 S.Ct. 667, 57 L.Ed. 1063, as well as Olson v. United States, supra, and United States v. Miller, supra, 317 U.S. at page 375, 63 S.Ct. 276, 87 L.Ed. ——. But the mere physical presence of hardpan on the property involved herein is not enough to show that the property was available for use as a source of supply of that material. It is of no use as a source of supply unless there is a market for it and the market for a material like hardpan is necessarily a limited local one. The reason for this is that the supply of hardpan is more than adequate to meet the demand; it is not a material dealt in as a commodity after severance from the land on which it is found; and, due to these factors and to its weight and bulk, it cannot economically be transported any great distance from the place where it is found to the place where it is to be used. Now, obviously, the construction of the dam at Franklin Falls created a market for the hardpan on the property condemned and thus gave that

land value as a gravel pit, but the question remains whether the value thus created is one the jury were entitled to consider. In our opinion the Miller case cited above establishes that it was not. In that case, at pages 376 and 377 of 317 U.S., at page 281 of 63 S.Ct., 87 L.Ed. ——, the Court said:

"If a distinct tract is condemned, in whole or in part, other lands in the neighborhood may increase in market value due to the proximity of the public improvement erected on the land taken. Should the Government at a later date, determine to take these other lands it must pay their market value as enhanced by this factor of proximity. If, however, the public project from the beginning included the taking of certain tracts but only one of them is taken in the first instance, the owner of the other tracts should not be allowed an increased value for his lands which are ultimately to be taken any more than the owner of the tract first condemned is entitled to be allowed an increased market value because adjacent lands not immediately taken increased in value due to the projected improvement.

"The question then is whether the respondents' lands were probably within the scope of the project from the time the Government was committed to it. If they were not, but were merely adjacent lands, the subsequent enlargement of the project to include them ought not to deprive the respondents of the value added in the meantime by the proximity of the improvement. If, on the other hand, they were, the Government ought not to pay any increase in value arising from the known fact that the lands probably would be condemned. The owners ought not to gain by speculating on probable increase in value due to the Government's activities."

Since, on the record before us, it seems evident that Rayno's land, although not contiguous to the land flooded or the land used for the dam site, was probably within the scope of the flood control project at Franklin Falls in that it was determined that it would be taken for use in building the type of dam determined upon at the place selected, it was "within the scope of the project from the time the Government was committed to it". Thus the market for hardpan created by the Government's activities at Franklin Falls cannot be considered in determining the value of the land from which it was taken.

There was evidence, however, of some market for Rayno's hardpan aside from the market created by the construction of the dam. It appears that during the two decades before this proceeding was begun some of it had been used for surfacing a few tennis courts in the neighborhood and for the construction of a few miles or rural road of the clay-chloride type, a use for which it was not too well adapted. It does not appear that any charge was made for the material taken for these purposes, but undoubtedly some charge might have been made, and under these circumstances we cannot say that error of law was committed in permitting the jury to find from the evidence that a market for Rayno's hardpan existed aside from the market created by the Government's flood control project at Franklin Falls. And, if the jury should so find, then they might conclude that a willing buyer would give more and a willing seller would insist upon receiving more for the property because of the presence upon it of the hardpan, and this logically makes it relevant to inquire into the unit price of the hardpan in the bank and its amount. National Brick Co. v. United States, 76 U.S.App.D.C. 329, 131 F.2d 30.

We come now to the alleged errors in the charge.

After the oral arguments the court charged the jury insofar as here material as follows:

"* * * you have just one duty to perform in this case and that's to fix fair and just compensation for the land which the Government has taken, which belonged to Mr. Rayno. * * *

"And now to get at the matter of fair and just compensation for the taking of this land let's sit down or you imagine that a willing seller sits down with a willing purchaser, across the table, each party knowing all the factors which would enter into a fair market value of the property, and they negotiate and they would arrive at a conclusion which would probably as nearly determine the fair market value of that property as anyone could determine it, mind you, each party, knowing, all the factors which should enter into a fair valuation of the property. Now that's what you gentlemen are to determine.

"You have those factors which you may consider as entering into the fair market value of this property from one side and

the other and you will determine from these factors what is a fair market value for the 12.3 acres of land which has been taken. Then the severance value. You will add the two together and that will be your verdict in this case."

The court then called counsel to the bench and after some colloquy the United States Attorney began to take his exceptions to the failure of the court to charge as he had previously requested in writing. The court asked him to read his requests, which he did, apparently aloud so that the jury could hear, and after each one was read the court commented thereon to the jury. This procedure was followed with respect to four or five of the requested instructions and then the following occurred:

"Mr. Murchie: Well now, Judge, I think I will state all my others as they occur in my requests. The Government excepts to the failure of the Court to give its requests numbers 8, 9, 10, 11, 12, 13, 14 and 16.

"Judge: Well, I don't know what you have got there, I can't remember what you have, there might be something I should give. I think I would like to have you read them, each one, and I can comment on it or not as I like.

"Mr. Murchie: Well, that's not the orthodox way to handle exceptions to failure to give instructions.

"Judge: Well, that may not be the orthodox way but I want to be fair to both sides and fair to the parties here."

Counsel for the landowner then said that he did not wish to take any exceptions to the charge as given and the jury were ordered to retire.

■ Counsel for the landowner first contends that the United States Attorney in effect waived his requests as enumerated above by declining to read them separately to the jury so that the court could comment upon them. We do not agree. It appears that the United States Attorney complied with Rule 51 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, in that he filed his requests for instructions on time and in writing and in that he objected to the court's failure to give them before the jury retired. No point is made that his objection was not sufficiently specific in that he failed to state "distinctly the matter to which he objects and the grounds of his objection". Nor do we think that that point, if made, would be good because from the previous trial, from motions made at this one, and from the rulings on the questions of evidence considered above the court must have been well aware of the legal theory upon which the United States Attorney wished to have the case submitted to the jury. In short, under the circumstances disclosed by the record in the case at bar there was no occasion for the United States Attorney to have specifically stated the grounds of his objection because the court must have known those grounds already.

In the requests the court was asked to charge the jury to the effect that the landowner was not entitled to recover any element of value arising from the prospect that the land would be taken by the Government; that the presence of the glacial till could not be considered unless there was a demand for the material by someone other than the Government; and that, there being no reasonable prospect of any market for the glacial till except the market created by the Government, the deposit should not be considered but the land should be valued as part of a farm.

■ From what we have already said with respect to the questions of evidence it is clear that these points, except the last one, should have been covered by the charge. And need for instructions on the matters covered by the requests is emphasized by the fact that the court admitted evidence of the amount of glacial till taken from the land by the Government. This evidence was admitted for the limited purpose of showing how much hardpan was on the land, but the jury were not told of this limitation. From this and from the brief and general nature of the charge as given, the jury might well have concluded that the Government ought to pay for the land on the basis of some price per cubic yard for the amount of hardpan taken from it, which, as we have shown above, it was not under any legal obligation to do. There must be a new trial for errors in the charge.

Since this is so we need not consider whether or not the verdict rendered at this trial was excessive.

The judgment of the District Court is vacated, the verdict is set aside and the case is remanded to that Court for further proceedings consistent with this opinion.