## CAMERON DEVELOPMENT CO., Inc., v. UNITED STATES.

### No. 10997.

Circuit Court of Appeals, Fifth Circuit.

Nov. 7, 1944.

Fred R. Wilson and Geo. A. DeCottes, both of Sanford, Fla., for appellant.

Norman M. Littell, Asst. Atty. Gen., Wilma C. Martin and Vernon L. Wilkinson, Attys., Dept. of Justice, both of Washington, D. C., H. S. Phillips, U. S. Atty., of Tampa, Fla., and W. D. Jones, Sp. Asst. to Atty. Gen., for appellee.

Before HUTCHESON, HOLMES, and WALLER, Circuit Judges.

HOLMES, Circuit Judge.

The proceedings below were to determine the fair market value of 858 acres of land in Seminole County, Florida. The property belonged to appellant, and was a part of that taken by the United States in condemnation proceedings for use as a Naval Air Station.

After taking possession of the property, which had theretofore been used exclusively as pasture land, the United States excavated and removed approximately 83,000 cubic yards of shell marl from the property,

using the shell for the construction of runways. At the trial appellant offered the testimony of several witnesses in an attempt to prove that these deposits greatly enhanced the market value of the property, but all this testimony was stricken upon motion of the Government. It is conceded that the sum awarded by the jury was just compensation for the property as pasture land, and the decisive question on appeal is whether the court committed reversible error in striking the proffered testimony.

The gist of this testimony was as follows: Shell marl had a commercial use as a stabilizer in the base of asphalt roads, and its price, in the vicinity at the time of the taking, was approximately 25¢ per cubic yard at the pit unmined. Appellant's property, at the time of the taking, contained deposits of shell marl in commercial quantities. At its price and weight, it could be mined commercially for consumers as much as 18 to 20 miles distant. Some counties in Florida, including Seminole County, had used shell marl in road construction. The deposits on appellant's property were sufficiently extensive to supply the base for a road approximately eight miles long if properly used. Similar deposits of shell marl were widespread throughout the coastal plains of Florida.

█ Just compensation, within the meaning of the Fifth Amendment to the Constitution, is the fair market value of the property at the time of the taking contemporaneously paid in money.[1] In determining this value, the highest and most profitable use for which the property is adaptable and needed, or is likely to be needed in the near future, is to be considered; but elements affecting value that depend upon events, which while possible are not fairly shown to be reasonably probable, should be excluded.[2] The judicial ascertainment of fair market value may not rest upon speculation and conjecture, nor is any owner entitled to compensation for any increase in value that may result to the property because of its condemnation.[3]

█ The proof offered by appellant, measured by these settled standards, did not establish that the property was available for use as a source of supply of shell marl. No evidence was offered to prove that any market existed, or was reasonably likely to exist in the near future, at which this shell could be profitably sold. No showing was made that any purchaser was willing to pay any more for the land, because of its shell deposits, than its market value as pasture land.

█ The mere physical adaptability of the property to use as a source of supply of shell marl, in the absence of a market for its commercial production, did not effect an increase in its market value.[4] In these circumstances, it was the duty of the court to exclude from the consideration of the jury all of the stricken testimony.[5]

The judgment is affirmed.

[1] Seaboard Airline R. Co. v. United States, 261 U.S. 299, 43 S.Ct. 354, 67 L. Ed. 664; Jacobs v. United States, 290 U. S. 13, 54 S.Ct. 26, 78 L.Ed. 142, 96 A.L. R. 1; Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236.

[2] Boom Co. v. Patterson, 98 U.S. 403, 408, 25 L.Ed. 206; Minnesota Rate Cases (Simpson v. Shepard), 230 U.S. 352, 452, 33 S.Ct. 729, 57 L.Ed. 1511, 48 L.R.A., N.S., 1151, Ann.Cas.1916A, 18; Los Angeles Gas & Electric Co. v. Railroad Commission, 289 U.S. 287, 53 S.Ct. 637, 77 L.Ed. 1180; Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236; United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55.

[3] Boston Chamber of Commerce v. Boston, 217 U.S. 189, 30 S.Ct. 459, 54 L.Ed. 725; Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236; Roberts v. City of New York, 295 U.S. 264, 55 S. Ct. 689, 79 L.Ed. 1429; United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L. Ed. 336, 147 A.L.R. 55.

[4] United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55; United States v. Rayno, 1 Cir., 136 F.2d 376.

[5] Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236; United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55; United States v. Foster, 8 Cir., 131 F.2d 3; United States v. Rayno, 1 Cir., 136 F.2d 376.