## CEMENTERIO BUXEDA, Inc. v. PEOPLE OF PUERTO RICO.

No. 4599.

United States Court of Appeals
First Circuit.
April 28, 1952.

Pablo Defendini, San Juan, P. R., for appellant.

Jaime J. Saldana, Asst. Atty. Gen., of Puerto Rico (Victor Gutierrez Franqui, Atty. Gen. of Puerto Rico, on brief), for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from a judgment of the Supreme Court of Puerto Rico, dated March 21, 1951, the reconsideration of which was denied on April 27, 1951. That judgment affirmed a judgment of the Court of Eminent Domain of Puerto Rico, which awarded the defendant-appellant, Cementerio Buxeda, Inc., $4,311.49 for a parcel of land which it claims has a fair and reasonable value of $49,846.50. The jurisdiction of this court is invoked under Title 28 U.S.C. § 1293.

On March 3, 1949, the plaintiff, The People of Puerto Rico, filed a petition for condemnation in the Court of Eminent Domain to acquire several lots or parcels of land located at Isla Verde, Puerto Rico, for the purpose of building the International Airport in Carolina and deviating Insular Road No. 57, in order that said road might not constitute an obstacle to the airport. Among the condemned parcels of land is Lot No. 14, which belonged to the defendant and contained about 1,642 square meters. The plaintiff upon its filing of the Declaration of Taking deposited in the Court of Eminent Domain the sum of $3,284.82 as the estimated just compensation for this parcel. The parties stipulated as to the value of certain improvements with which we are not concerned here. The condemned parcel was severed from a larger tract and bounds northerly on Insular Road No. 57. Said parcel was part of a tract of land which was being operated as a cemetery. The whole tract contained 18,000 square meters which the defendant purchased in 1945 for $10,000. The Court of Eminent Domain decreed that the plaintiff pay to the defendant the sum of $4,311.49 as just and reasonable compensation for the land condemned instead of $3,284.82, the amount originally deposited. The defendant appealed to the Supreme Court of Puerto Rico which affirmed the judgment of the Court of Eminent Domain.

In its brief the defendant argues the following points:

"The land was actually dedicated to cemetery purposes prior to and at the time of the taking.

"The land taken had, and could possibly have, no value in the market other than as land for cemetery purposes.

"The evidence offered to show the actual market value of individual plots for grave sites was not speculative.

"The court below did not permit evidence to show the market value of the condemned land for cemetery purposes.

"The doctrine applied in the case of Laureldale Cemetery Co. v. Reading Co. [303 Pa. 315], 154 A. 372 (Pa., 1931) was erroneously applied in the case at bar.

"The judgment of the lower court was not supported by the evidence on the record."

The defendant's main contention is that the Court of Eminent Domain erroneously excluded evidence tending to establish that the valuation or compensation for the condemned parcel should be determined on the basis of what the parcel was worth on the market as land actually devoted to burial sites, to be demonstrated by evidence of contemporaneous sales of burial sites made by the defendant in its cemetery unit and also by contemporaneous sales of burial sites by other cemetery enterprises, including the municipal government of San Juan, in similar cemetery units

and conditions. It argues that a valuation was applied which disregarded entirely the use to which the land was dedicated and could possibly be dedicated, that is, a valuation applicable to land *not developed* and *not dedicated* to said specific use, but merely adaptable to said use.

The record is highly confusing and is interspersed with a variety of interruptions and colloquies between counsel and the court. However, we are convinced that the defendant was prejudiced by certain rulings, which were in effect affirmed by the Supreme Court of Puerto Rico, especially those relating to the exclusion of evidence and the application of the Laureldale case.

As to the Laureldale case, the Court of Eminent Domain stated that:

"The defendant corporation tried to prove the market value of the parcel condemned by testimony as to the price it (and other cemeteries) were receiving for space required for the construction of graves and then applying that price to the number of graves it could construct on the condemned tract, less the expenses of construction and other disbursements, the defendant estimated that the remainder represented the market value of the tract.

"The Court held that said estimate of $41,000 reached by the witness was based on speculative factors and considerations and hence his testimony was clearly inadmissible (Laureldale Cemetery Co. v. Reading Co., 303 Pa. 315, 154 A. 372)."

The Supreme Court of Puerto Rico in affirming said:

"In these assignments of error the defendant complains of the refusal of the lower court to permit it to prove the market value of the parcel condemned by testimony as to the price it (and other cemeteries) was receiving for space required for the construction of graves and then applying that price to the number of graves it could construct on the tract, less the expenses of construction and other expenses. Relying on Laureldale Cemetery Co. v. Reading Co., 154 A. 372 (Pa., 1931), the lower court excluded such testimony on the ground that it was based on speculative considerations.

"We agree with the lower court on this point. The defendant was entitled to adduce proof as to the market value of the parcel for cemetery purposes, even though it had not yet been utilized for that purpose. People v. Garcia, 66 P.R.R. 478, 483, and cases cited; People v. Carmona, 70 P.R.R. 292. And the lower court permitted this evidence. But under the circumstances such testimony must be confined to what the entire condemned parcel would bring on the market. To permit discussion of the prices which might be charged for grave sites if they had actually been laid out enters the area of speculation and conjecture with which the courts are not concerned when seeking to determine the market value of a tract not yet being utilized for cemetery purposes. Laureldale Cemetery Co. v. Reading, Supra; * * *."

This application of the Laureldale case is in our opinion inescapably wrong and patently erroneous. It is distinguishable and in any event is not controlling. In that case the condemned parcel contained "8¼ unused acres of a total cemetery plot of 117 acres * * *. No interments had been made nearer than 600 feet to the land appropriated." 154 A. 372. At page 375 the court stated: "When this case * * * was before this court in 1927 * * * it was held, * * * that the proceedings could not be resisted * * * '* * as it appears the land appropriated * * has not at the present time been devoted to such purposes, nor does its appropriation interfere with the use of the remainder of the cemetery property for the purpose intended.'" In the instant case, the condemned parcel was at the frontal part of the cemetery property, its most valuable part as appears from the record. It was an integral part of the whole and was dedicated to cemetery purposes and was restricted exclusively to that use and no other

use. The entire tract of 18,000 square meters, around which a wall had been built, was "totally" dedicated to cemetery purposes. The record contains no basis for any other reasonable conclusion. It also appears that the defendant spent about 18 months in getting governmental permission to dedicate this land to cemetery purposes. It was a unitary whole. The condemnation of this parcel did affect the tract in that it expropriated about 9% of its area. The fact that there were no burials in the condemned parcel is the very reason that it has value to the defendant or any prospective purchaser for cemetery purposes. We are of the opinion that the Supreme Court's application of the Laureldale case was patently erroneous in this regard. The court actually rejected the test of judging market value by the property's "highest and most profitable use," People v. Carmona, 70 P.R.R. 292, 295; People v. Garcia, 66 P.R.R. 478, 483; cf. National Brick Co. v. United States, 76 U.S.App.D.C. 329, 131 F.2d 30. Furthermore, evidence tending to show its value for the use to which it was actually adapted was not allowed. Any testimony that did get into the record in this respect was expressly disregarded, or was produced in cross examination or in some other unsatisfactory manner. The defendant should be permitted to present its evidence, if it be admissible, and should not be forced to take what might be brought out in cross examination. The defendant should have been allowed to show the value of the property as used for a cemetery as a whole at the time of the condemnation and its value after the condemnation. The difference would be the measure of the compensation allowable to it. As stated in Baetjer v. United States, 1 Cir., 143 F.2d 391, 396, certiorari denied 323 U.S. 772, 65 S.Ct. 131, 89 L.Ed. 618: " * * * So, given a single tract under the test of unitary use and a taking of part of it, there may or there may not be severance damages depending upon whether the taking of the part operates to reduce the market value of what remains. The landowner's compensation is the difference between the fair market value of the entire unitary tract before the taking and the fair market value of the part of the tract remaining thereafter." There is no doubt here but that the taking of certain burial sites reduced the value of the whole and is very much like taking sand as in the National Brick Co. case, supra.

By its various rulings the Court of Eminent Domain excluded evidence of sales of separate burial sites, not only in other cemeteries but also in this particular cemetery. By these rulings the defendant was prevented from showing two very important factors which should have been considered in arriving at a valuation. We have no doubt that the court would have been correct had it rejected the evidence as to the value of the individual burial sites if it had been introduced solely to indicate loss of business profits. For that purpose the evidence is irrelevant, Mitchell v. United States, 1925, 267 U.S. 341, 45 S. Ct. 293, 69 L.Ed. 644. But the defendant states in its brief: "The evidence was offered not for the purpose of claiming profits as such, but to show the productiveness and capabilities for yielding profits and income as bearing on the value—the present value—of the land." However, the evidence was rejected apparently even for the purpose of showing the value of the tract and parcel. It is one thing to exclude evidence because it is speculative in that it seeks to establish future and questionable profits that might or might not accrue if the burial sites had a market, if there were purchasers, if the prices were reasonable, etc. It is quite another thing to exclude such evidence where it seeks to establish "what a willing buyer would pay in cash to a willing seller." See United States v. Miller, 317 U.S. 369, 374, 63 S.Ct. 276, 87 L.Ed. 336; Baetjer v. United States, supra. In the latter situation the inquiry would properly encompass an investigation of the facts as to the capacity of the parcel for burials, its location, past sales in this and other similar cemeteries, the reasonableness of the prices charged for individual burial sites, and in general its future prospects as they would appear to "a willing buyer". The rejection of this evidence was, there-

fore, error. The fact that there was no market or a limited market for such property is favorable to its admission. 7 A.L.R. 171–175; 18 Am.Jur., Em.Dom. § 345, p. 989; City and County of Denver v. Quick, 108 Colo. 111, 113 P.2d 999, 134 A.L.R. 1120; Chapman v. United States, 10 Cir., 169 F.2d 641, certiorari denied 335 U.S. 860, 69 S.Ct. 134, 93 L.Ed. 406; Northern Pac. Ry. Co. v. North American Tel. Co., 8 Cir., 230 F. 347, 352, L.R.A.1916E, 572; Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236; 18 Am. Jur., Em. Dom. § 247, p. 885; City of Chicago v. Farwell, 286 Ill. 415, 121 N.E. 795.

The court appears to have disregarded the nature of the property and its capabilities. The income derived from the sale of burial sites in this and other cemeteries was an ascertainable amount not based on speculative considerations. The income was not such that the skill of the management of the property was important. A prospective purchaser would obviously look at the sale of burial sites made, the capacity of the cemetery, the cost of interment, etc. This is not to say that valuing the parcel is merely a problem in multiplication. Rather, such figures as sales and cost of interment, among others, are factors which would be considered by a prospective buyer and would help to form a basis for valuing the tract before and after the condemnation. As to lot sales being used as an indicia of value, see United States v. Iriarte, 1 Cir., 166 F.2d 800, 804, certiorari denied Iriarte v. U. S., 335 U.S. 816, 69 S.Ct. 36, 93 L.Ed. 371, and the caution contained therein.

We find no substantial error in the admission of the certificates of the Registrar of Property of Rio Piedras dealing with recorded land sales. The question as to their weight, though of doubtful assistance, was for the trial court. Cf. Baetjer v. United States, supra.

We, therefore, conclude that the court should have regarded the condemned parcel as being utilized for cemetery purposes and that evidence of the value of the individual burial sites should have been admitted as bearing on the valuation of the parcel and the price a willing buyer would pay.

The judgment of the Supreme Court of Puerto Rico is vacated and the case is remanded to that court with directions to remand the same to the Court of Eminent Domain, ordering the latter court to vacate its judgment and take further proceedings not inconsistent with this opinion.

MAGRUDER, Chief Judge.

I concur and would only add that I am not sure that we are concerned here simply with questions of local Puerto Rican law, as to which we may not upset a judgment of the Supreme Court of Puerto Rico unless it is "inescapably wrong". De Castro v. Board of Commissioners, 1944, 322 U.S. 451, 64 S.Ct. 1121, 88 L.Ed. 1384. It is true, questions of the rules of evidence to be applied in the insular courts would ordinarily be of that category. But the Bill of Rights in the Organic Act contains the prohibition, 48 U.S.C.A. § 737: "Private property shall not be taken or damaged for public use except upon payment of just compensation ascertained in the manner provided by law." It would seem that a federal question is presented, as to which this court is entitled to take its independent view, when the relevance, and hence admissibility, of evidence is determined by the factors which a condemnee is entitled to establish as bearing on the amount of "just compensation" guaranteed to him by the Organic Act.

Judge WOODBURY concurs also in this opinion.