UNITED STATES of America,
Plaintiff,

v.

LAND IN DRY BED OF ROSAMOND
LAKE, CAL., et al., Defendants.

Nos. 16661–C, 16877–C, 17371–C,
17598–C.

United States District Court
S. D. California, Central Division.

July 23, 1956.

Laughlin Waters, U. S. Atty., A. R. Early, Jr., Asst. U. S. Atty., Los Angeles, Cal., for plaintiff.

Irl D. Brett, Los Angeles, Cal., Frank Wickhem, Los Angeles, Cal., Earl E. Howard, Hollywood, Cal., Brott & Feldan, Los Angeles, Cal., Roger M. Sullivan, Los Angeles, Cal., for various defendants.

**JAMES M. CARTER, District Judge.**

This action concerns parcels of land lying in the dry bed of Rosamond Lake, California, taken by the government through eminent domain. The ultimate issue is the fair market value of the land as of the date of taking.

In pretrial proceedings, the court required the government and the defendant landowners to state what they would contend at the trial, would be the highest and best use or uses to which the land was reasonably suited or adapted; and required there be submitted *en camera* to the court for inspection, the value which the respective experts would place on the land. The pretrial stipulation shows that the government's witnesses will testify that the highest and best use of the tracts are for desert homesites; that defendant landowners' witnesses will testify that the highest and best use is for mining sites for the production of rotary clay used in oil drilling.

The en camera valuations submitted privately to the court show a vast discrepancy in the values to be placed on the land by the government's experts, and by the defendants' experts.

Thus, as shown in the pretrial stipulation, the issue arises as to whether these lands have a fair market value based on the existence of rotary drilling clay. The government experts propose to testify that although there is clay present, it is entirely unsuitable for use in oil drilling because of an excess of sand and salts, and that there is no market for such clay. Conversely, the defendant landowners' experts propose to show that there is in place a vast amount of clay, that although it contains an excess of sand and salt, this sand and salt can be removed by a modern engineering process, and that there would be a market for the resulting beneficiated clay.

The question now arises on trial, as to what testimony the experts for the landowners may give.

(a) Quantity and Quality of rock, mineral or timber in place and the per ton or unit value thereof cannot be multiplied out to give market value; nor may it be valued separate from the land.

"* * * The separate valuation of timber or rock attached to land, or valuations arrived at by a process of multiplying the number of cubic feet or yards by a given price per unit, are *not approved* bases for evaluation. United States [ex rel. Tennessee Valley Authority] v. Indian Creek Marble Co. D.C., 40 F.Supp. 811. * * *" United States v. 13.40 Acres, D.C.Cal.1944, 56 F.Supp. 535, at page 538. From the facts of that case, the experts for the landowner did exactly the thing shown in the quote, namely multiplied the yards by a given price and arrived at a valuation. The court properly granted a motion for a new trial.

In Cementerio Buxeda, Inc., v. People of Puerto Rico, 1 Cir., 1952, 196 F.2d 177, 180, certiorari denied 344 U.S. 876, 73 S.Ct. 170, 97 L.Ed. 678, the judgment of the Supreme Court of Puerto Rico was vacated and the case remanded with directions to the court of Eminent Domain of Puerto Rico. The case involved the taking of a portion of a cemetery which had not yet been used for burials.

"* * * By its various rulings the Court of Eminent Domain excluded evidence of sales of separate burial sites, not only in other cemeteries but also in this particular cemetery. *By these rulings the defendant was prevented from showing two very important factors which should have been considered in arriving at a valuation. We have no doubt that the court would have been correct had it rejected the evidence as to the value of the individual burial sites if it had been introduced solely to indicate loss of business profits. For that purpose the evidence is irrelevant,* Mitchell v. United States, 1925, 267 U.S. 341, 45 S.Ct. 293, 69 L.Ed. 644. * * * It is quite another thing to exclude such evidence where it seeks to establish 'what a willing buyer would pay in cash to a willing seller.' See United States v. Miller, 317 U.S. 369, 374, 63 S.Ct. 276, 87 L.Ed. 336; Baetjer v. United States, supra [1 Cir., 143 F.2d 391]. In the latter situation the inquiry would properly encompass an investigation of the facts as to the capacity of the parcel for burials, its location, past sales in this and other similar cemeteries, the reasonableness of the prices charged for individual burial sites, and in general its future prospects as they would appear to 'a willing buyer'. The rejection of this evidence was, therefore, error. * * *" [Emphasis supplied.]

The court added:

"* * * *This is not to say that valuing the parcel is merely a problem in multiplication.* Rather, such figures as sales and cost of interment, among others, are factors which would be considered by a prospective buyer and would help to form a basis for valuing the tract before and after the condemnation. As to lot sales being used as an indicia of value, see United States v. Iriarte, 1 Cir., 166 F.2d 800, 804, certiorari denied Iriarte v. United States, 335 U.S. 816, 69 S.Ct. 36, 93 L.Ed. 371, and the caution contained therein. * * *"

In National Brick Co. v. United States, 1942, 76 U.S.App.D.C. 329, 131 F.2d 30, the land in question contained a sand bank containing 300,000 cubic yards of pure sand. The court prevented the landowners' expert from giving testimony concerning the value per ton of the sand from the bank, as to whether he had bought sand of the same quality and what he had paid for it, and as to the value of the land with the sand. The court limited the testimony to the fair market value of the property for land as real estate. The judgment was reversed and remanded for a new trial. The circuit court said, 131 F.2d at page 31:

"* * * And we know of no other evidence by which the jury could be properly guided in determining the value of the property than to be told the per ton value of the sand as it lay, or, without this knowledge, how the jury could ever have reached a judgment based on anything more than guess or speculation. * * *"

The court in its concluding paragraph, said, 131 F.2d at page 32:

"* * * We think the inquiry should have been whether the property was valuable in the open market for the sale of sand or for the use of sand in the making of bricks; and that in order to reach a fair conclusion in this respect the jury should have been informed by competent witnesses as to the quantity of the sand, the quality of the sand, the uses to which it might be put,

whether there was a market for it, and the value of the land with the sand in that market in its then condition. * * *"

This final statement we think to be a correct statement of law and the resulting decision correct. We cannot agree with the earlier portion of the opinion if it purports to say that the *fair market value* of the sand in place could be presented to the jury, separate and apart from the valuation of the land itself.

It is something totally different to permit an expert to inform a jury, that one *factor* considered was the amount of sand in place and its price per ton. This is the presentation of a factor which might well have been considered in the market place, and is not independent evidence of the fair market value of the sand.

In Clark v. United States, 8 Cir., 1946, 155 F.2d 157, 160, a parcel of property which had been improved as a recreational area for the employees of the owner, was taken. It contained a lake, peninsula for parking cars, beaches, a dam, wooded areas and a tract of white oaks. Much of its value lay in the improvements. The court quoted United States v. Miller, supra, to the effect that " 'where, for any reason, property has no market value, resort must be had to other data to ascertain its value.' " The trial court had refused to permit the jury to be informed as to the separate value of buildings and structures upon the land. It was held, at page 161, that this was an abuse of discretion. The court quoted with approval from National Brick Co. v. United States, supra.

In Cade v. United States, 4 Cir., 1954, 213 F.2d 138, 141, the court found error in the exclusion of testimony of experts who testified there was a deposit of granite rock on the ground which was reasonably worth $25,000. The court said: "* * * There was no reason why their testimony as to the value of the deposit of rock should not have been admitted for consideration by the jury in estimating the value of the land taken. * * *" The court also cited with ap-

proval National Brick Co. v. United States, supra.

The fourth circuit had earlier permitted the separate value of timber to be stated, apart from the value of the land, including the timber thereon, United States v. 5139.5 Acres, etc., 4 Cir., 1952, 200 F.2d 659, 661.

We think the better rule is stated by the fifth, sixth and seventh circuits. Georgia Kaolin Co. v. United States, 5 Cir., 1954, 214 F.2d 284, at page 286, states:

"In eminent domain proceedings, the existence of valuable mineral deposits in the condemned land constitutes an element which may be taken into consideration if and in so far as it influences the market value of the land. The reason for this rule is said to be that the measure of compensation in such cases is the market value of the land to be condemned, taken as a whole and with due consideration of all the components that tend to make its market value. This rule has been applied to limestone deposits, gold ore, fire clay, coal, stone, and sand and gravel, 156 A.L.R. 1416–1417; but there can be no recovery for both the value of the land and its mineral deposits as two separate items. Atlanta Terra Cotta Co. v. Georgia Ry. & Electric Co., 132 Ga. 537, 64 S.E. 563; United States v. 620.00 Acres of Land, etc., D.C., 101 F.Supp. 686; Orgel on Valuation, under Eminent Domain, page 544, rejecting the method of estimating the amount of stone in situ and multiplying this amount by a fixed price per unit; also citing Searle v. Lackawanna and Bloomsburg Railroad Co., 33 Pa. 57. In rejecting the method of multiplying the estimated amount of clay by a fixed price per unit, the conclusion is largely based on its speculativeness. In discussing this point, the court below said that whether or not the deposits would be mined and the royalties paid would depend upon the condition of

the market, the uncertainty of the future, the demand for the product, 'and many other elements, on and on, in the future.'"

United States v. Meyer, 7 Cir., 1940, 113 F.2d 387, at page 397, states:

"Likewise the value of timber growing upon the land was immaterial. The test is the value of the real estate as a whole and separate valuation of the timber would necessitate another valuation of the land thereof. All of the facts and circumstances bearing upon the condition and nature of the land as a whole and its possible use are proper as elements bearing upon value, but separate appraisements of the different elements constituting the whole are improper." Morton Butler Timber Co. v. United States, 6 Cir., 1937, 91 F.2d 884, 887–888.

■ (b) Capitalizing an actual or prospective business to arrive at fair market value is improper.

A defendant may not capitalize an actual or prospective business and thereby determine fair market value of land.

Welch v. Tennessee Valley Authority, 6 Cir., 1939, 108 F.2d 95, at page 100, states:

"Anticipated profits from any business, especially farming, are too uncertain and speculative in character to be of much weight in determining farm values. Their realization depends more upon general business conditions, trading, skill and business acumen of the proprietors and weather changes than upon location.

"The same handicap is inherent in estimating profits to be realized from the sale of young trees many years from merchantable size. * * *

"This character of testimony leads us into the forbidden domain of conjecture and speculation. From the evidence here it would be impossible to do more than guess what profit, if any, would be realized from the production of corn on the lands in question and there is equal uncertainty as to the market value of young trees too small for manufacture. * * * *"

United States v. Meyer, 7 Cir., 1940, 113 F.2d 387, at page 397, states:

"Past profits and probable future profits are too conjectural to furnish any basis for determination of value."

However, there is a distinction between capitalization of profits and capitalization of rental value. Capitalization of anticipated rental value was permitted by the 9th Circuit Court in United States v. Waterhouse, 1943, 132 F.2d 699. In an earlier case, United States v. Shingle, 1937, 91 F.2d 85, at page 89, the 9th Circuit Court stated "Rental value is proper evidence of market value, especially where, as in this case, there is no evidence of sales." In this case, however, the rentals were not capitalized.

■■ (c) The test is, what uses, and what factors would be considered in the market place, by the willing buyer and the willing seller.

Just compensation under the Fifth Amendment is measured by market value of the property taken, and not by the use value. Market value is the first and general test. United States v. Toronto, Hamilton & Buffalo Navigation Co., 338 U.S. 396, 70 S.Ct. 217, 94 L.Ed. 195; United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336; Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236; United States v. New River Collieries Co., 262 U.S. 341, 43 S.Ct. 565, 67 L.Ed. 1014; United States v. Meyer, 7 Cir., 113 F.2d 387, certiorari denied 311 U.S. 706, 61 S.Ct. 174, 85 L.Ed. 459.

In the New River Collieries case, supra [262 U.S. 341, 43 S.Ct. 567], the Supreme Court stated the rule as follows:

"'If it be an article commonly traded in on a market, and it is shown that at the time and place it was taken there was a market in which like articles in volume were

openly bought and sold, the prices current in such a market will be regarded as its fair market value, and likewise the measure of just compensation for its requisition.' "

The Supreme Court has generally stated the rules to be followed in Olson v. United States, 1934, 292 U.S. 246, at pages 255–256, 54 S.Ct. 704, at page 708, 78 L.Ed. 1236,

" * * * The sum required to be paid the owner does not depend upon the uses to which he has devoted his land but is to be arrived at upon just consideration of all the uses for which it is suitable. The highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered, *not necessarily as the measure of value, but to the full extent that the prospect of demand for such use affects the market value while the property is privately held.* Boom Co. v. Patterson, 98 U.S. 403, 408, 25 L.Ed. 206; Clark's Ferry Bridge Co. v. Public Service Commission, 291 U.S. 227, 54 S.Ct. 427, 78 L.Ed. 767, 2 Lewis, Eminent Domain, 3d Ed., § 707, p. 1233; 1 Nichols, Eminent Domain, 2d Ed., § 220, p. 671. * * * And, to the extent that *probable demand* by prospective purchasers or condemners affects market value, it is to be taken into account. Boom Co. v. Patterson, ubi supra. * * * " [Emphasis supplied.]

Such test of fair market value is generally made in the case of land by the use of comparable sales. If there are no comparable sales, or an insufficient number of them to indicate the market, then secondary or opinion evidence may properly be used. Olson v. United States, supra; Minnesota Rate Cases (Simpson v. Shepard), 230 U.S. 352, 33 S.Ct. 729, 57 L.Ed. 1511; Stephenson Brick Co. v. United States, 5 Cir., 110 F.2d 360; Welch v. Tennessee Valley Authority, 6 Cir., 108 F.2d 95,

certiorari denied 309 U.S. 688, 60 S.Ct. 889, 84 L.Ed. 1030.

In the ordinary land case, opinion evidence is generally used, since sales on the market vary greatly in their comparability, and strictly speaking, no piece of land is identical to another. It is elemental that the sale of the same piece of land on the market at a date immediate to the date of taking, would be the best comparable sale.

Where the comparability of sales is not sufficient and resort is had to opinion evidence, and to an expert's estimate of fair market value, the statement in Olson v. United States, supra, is pertinent,

"As that measure * * * is lacking, the market value must be estimated. In respect of each item of property that value may be deemed to be the sum which, considering all the circumstances, could have been obtained for it; that is, the amount that in all probability would have been arrived at by fair negotiations between an owner willing to sell and a purchaser desiring to buy. In making that estimate there should be taken into account *all considerations that fairly might be brought forward and reasonably be given substantial weight in such bargaining.* * * * The determination is to be made in the light of *all facts affecting the market value that are shown by the evidence* taken in connection with *those of such general notoriety* as not to require proof. *Elements affecting value* that depend upon events or combinations of occurrences which, while within the realm of possibility, are not fairly shown to be reasonably probable should be excluded from consideration for that would be to allow mere speculation and conjecture to become a guide for the ascertainment of value—a thing to be condemned in business transactions as well as in judicial ascertainment of truth." [Emphasis supplied.]

The "considerations that fairly might be brought forward", "all facts affecting the market value", facts of "general notoriety," not requiring proof, and "elements affecting value", referred to in Olson v. United States, supra, are the *factors* on which the expert bases his opinion. Such factors may obviously be presented to the jury if they would reasonably have been considered by the willing buyer and the willing seller in the market place

In Cade v. United States, 4 Cir., 1954, 213 F.2d 138, 140, a judgment was reversed where the landowners' expert took various parts of the parcels of land at so much per acre with different valuations, described the buildings and the values of each and valued the buildings in toto at $15,000 and where the trial court struck out this evidence. The court quoted from Wade v. Carolina Telephone & Telegraph Co., 147 N.C. 219, 60 S.E. 987, as follows:

"* * * 'Certainly such matters would be considered by any business man in selling, buying or valuing the property; and when the court adopts the standards of the market place in making valuations there is no reason why it should close its eyes to how the market place arrives at and applies the standards. * * *'"

■ (d) It is necessary there be shown a market, good or bad, large or small, for the rock mineral or timber in place, before such a factor may be presented.

In Clark v. United States, supra, there was testimony offered as to the marketability of the rock and the demand for it in the area, 213 F.2d at page 142. The court distinguished Cameron Development Co. v. United States, 5 Cir., 145 F.2d 209, on the ground that in that case there was there no showing of a market for marl which would give it value, 213 F.2d at page 142.

In Cameron Development Co. v. United States, 5 Cir., 1944, 145 F.2d 209, at page 210, referred to in the foregoing decision, the court said,

"* * * The proof offered by appellant, measured by these settled standards, did not establish that the property was available for use as a source of supply of shell marl. No evidence was offered to prove that any market existed, or was reasonably likely to exist in the near future, at which this shell could be profitably sold. No showing was made that any purchaser was willing to pay any more for the land, because of its shell deposits, than its market value as pasture land. The mere physical adaptability of the property to use as a source of supply of shell marl, in the absence of a market for its commercial production, did not effect an increase in its market value. In these circumstances, it was the duty of the court to exclude from the consideration of the jury all of the stricken testimony. * * *"

United States v. Rayno, 1 Cir., 1943, 136 F.2d 376, 378, certiorari denied 320 U.S. 776, 64 S.Ct. 90, 88 L.Ed. 466, involved a 12.3 acre parcel which contained a hardpan material which the government had subsequently used as a gravel pit to carry on construction. The court said, "* * * it has long been established that one of the elements or factors to be considered in cases of this sort is all the available uses which might be made of the property." [Citing cases.] "But the mere physical presence of hardpan on the property involved herein is not enough to show that the property was available for use as a source of supply of that material. It is of no use as a source of supply unless there is a market for it and the market for a material like hardpan is necessarily a limited local one. * * *"

The court held that "the market for hardpan created by the Government's activities * * * can not be considered in determining the value of the land from which it was taken. There was

evidence, however, of some market for Rayno's hardpan aside from the market created by the construction of the dam. * * * we cannot say that error of law was committed in permitting the jury to find from the evidence that a market for Rayno's hardpan existed aside from the market created by the Government's flood control project at Franklin Falls. And, if the jury should so find, then they *might conclude that a willing buyer would give more and* a willing seller would insist upon receiving more for the property because of the presence upon it of the hardpan, and this logically makes it relevant to inquire into the unit price of the hardpan in the bank and its amount. National Brick Co. v. United States, 76 U.S.App.D.C. 329, 131 F.2d 30. * * *" [Emphasis supplied.]

In St. Joe Paper Co. v. United States, 5 Cir., 1946, 155 F.2d 93, at page 97, the court states:

" * * * In the Cameron Development Co. case we pointed out that before the owner of the condemned land could show adaptability to a use he must show a market existed or was reasonably likely to exist in the near future. * * * Appellants' argument has a major fallacy: When they asked questions concerning adaptability for resort and residential business purposes, they never made an offer to prove to the satisfaction of the court the present or future demand, the connecting link from adaptability to value. * * *"

See also language here quoted from National Brick Co. v. United States, supra, and see Cade v. United States, supra, 213 F.2d at pages 142–143.

■■■■ (e) There should be distinguished the question of a market for the land or property in question from the question of a market or demand for rock, mineral, timber or other material located thereon.

It is elemental and has been uniformly held that although there is no immediate market for the *land* in question, still it has a value which must be ascertained by the trier of fact in order to award just compensation. The landowner need not show there is someone ready to buy. The discussions and citations under (c) supra are material here. The various factors which would have been considered by a supposed willing buyer and a willing seller in the market place are material.

But where one of the *factors* to be considered by the expert and presented to the jury to buttress his opinion, is a commodity in place on land, e. g., rock, mineral, timber, sand or dirt, there must be shown there is some market or demand for such commodity or such factor may not be considered by the expert or presented to the jury. To hold otherwise would be to confuse the jury and waste its time and that of the court.

For example, most land contains dirt in place thereon. Ordinarily there is no market for the sale of ordinary dirt. In most localities owners must pay to have it removed. Thus, the amount in place should not be considered. If however there was in the vicinity a market for dirt to be used in filling a swamp, this factor, the presence of the dirt and the market price could be considered by the expert and presented to the jury as one of his reasons for his opinion.

### Conclusions

From the foregoing we would summarize the law as follows:

(1) that a landowner in dealing with a parcel of land on which there is a mineral, timber or like substance may not introduce expert testimony by which the expert multiplies the gross material present by the market value per unit thereof and thereby arrives at a figure which purports to be fair market value for the parcel;

(2) that the landowner may not by expert testimony capitalize the present or future value of a business enterprise and thereby arrive at fair market value; that rental value may, however, be capitalized;

(3) that the landowner is entitled to have an expert or lay witness describe the commodity or substance on the land, the quantity thereof, the going price thereof as *factors* only, upon which the expert may in part base his value as to the *fair market value* of the parcel in question; that a landowner is not entitled to present testimony as to the fair market value of the mineral or timber or other substance apart from the value of the land. Insofar as Clark, Cade and National Brick cases, supra, may so hold or indicate to the contrary, we find ourselves in disagreement therewith; that if the holding of National Brick, supra, is restricted to the portion quoted in this memorandum, which portion is the concluding paragraph of the opinion, we are not in disagreement with National Brick. In other words, a clear distinction must be drawn between what is presented and considered as a *factor* underlying the expert's opinion as contrasted with opinion as to the fair market value of the substance, timber or mineral itself, apart from the land.

(4) that the landowner must make a showing of some sort of market, poor or good, great or small, for the commodity in question before the quantity and price of the commodity or substance may be presented to the jury to be used as a factor in the expert's opinion testimony;

(5) that since the inquiry is essentially one as to what would have been the negotiations between the willing buyer and the willing seller, there may be taken into consideration by the expert only those *factors* which would have been reasonably so considered;

(6) that except in cases where the matter is so clear that it becomes a question of law it is generally a question for the jury to determine whether the proposed *factor* underlying in part the opinion of the expert as to the fair market value, is one which would have reasonably been considered by the willing buyer and the willing seller;

(7) that where the commodity in place on the land has a defect, or is deficient in quality, testimony may be introduced showing that the defect or lack of quality may be remedied or cured by scientific or business methods if the willing buyer and willing seller in the market place would have reasonably considered such a *factor*;

(8) that in such instance, unless the matter is so clear that it becomes a question of law, the question is one of fact for the jury to determine whether the commodity could be so remedied or cured and such a factor may only be considered by the jury as supporting the expert's opinion if the commodity could reasonably be corrected or remedied.

The court therefore holds in this case that it will permit testimony as to the proposed cost per ton to remove the sand and the salt from the clay in the deposit in question, subject to the condition that there be introduced evidence of some market value, good or bad, great or small, for the clay so produced and beneficiated.

As in all cases involving the opinion of the expert as to fair market value, the jury should be instructed that the factors considered by the expert are not in themselves direct evidence of the fair market value of the land condemned, but may be considered by the jury only for the purpose of determining what weight, if any, the jury accords to the testimony of the expert in his ultimate opinion as to the fair market value of the land in question as of the date of taking.