[File No. 6991]

GEORGE LINEBURG, as Administrator of the Estate of John G. Jacobson, Deceased, Respondent, v. K. B. SANDVEN, C. H. Goranson, Nels N. Oksendahl, Nels Baustad, and John J. Kirkeide, as the Board of County Commissioners of Benson County, North Dakota, and J. S. Lamb, as Highway Commissioner of the State of North Dakota, Appellants.

(21 NW2d 808)

Opinion filed February 28, 1946

*L. L. Butterwick,* for appellant.

*F. T. Cuthbert,* for respondent.

CHRISTIANSON, Ch. J. This controversy arises out of the laying out of a public highway across a certain farm adjacent to the village of Church's Ferry. The farm contains 286.57 acres of land. It is sought to take a strip across the farm, containing 21.88 acres, for highway purposes. The farm is part of the estate of John G. Jacobson, deceased. The parties were unable to agree upon the damages resulting from the establishment of the highway, and proceedings were instituted before the Board of County Commissioners for ascertainment and determination of the damages sustained by the owner of the farm as a result of the establishment of the highway. ND Rev Code 1943, § 24-0119.

After hearing duly had the Board of County Commissioners made an award fixing the amount of damages sustained by the owner of the farm as a result of the establishment of the highway, as follows:—

Value of the land (21.88 acres) taken .......$437.80
Value of the fence .........................  187.50
Damages to lands not taken ................  374.70

Making a total of .......................$1000.00

George Lineburg, the administrator of the estate of John G. Jacobson, being dissatisfied with the award, appealed to the district court from the determination of the Board of County Commissioners. ND Rev Code 1943, § 24–0123.

On the trial had in the district court a jury was waived and the case was tried to the court without a jury. It was stipulated that the only question for determination by the court was the amount of damages; the necessity for the establishment of the highway and the taking of the strip of land for right of way was conceded.

The record discloses that considerable testimony was adduced by the respective parties upon the question of damages. Seven witnesses were called by the administrator, and six witnesses were called by and on behalf of the state highway commissioner, to testify as to damages.

The trial judge filed a memorandum decision wherein he stated his conclusions with respect to the law and the facts in this case, as follows:—

"This is an appeal from the award by the Board of County Commissioners of Benson County for compensation for a strip of land across the farm of appellant taken by condemnation proceedings for highway purposes.

Appellant's property, a part of which is taken and the remainder claimed to be damaged, consists of 286.57 acres of farm land with adequate buildings and improvements operated as a single unit in Benson County in this State.

The land condemned for highway purposes consists of a strip 200 feet wide across said farm, said strip containing in all 21.88 acres and thus cutting the farm into two parcels, one parcel lying to the north of the proposed highway containing about 216 acres and one parcel lying to the south containing about 48 acres.

The law applicable to this case seems to be pretty well settled for this jurisdiction. The compensation to which appellant is entitled is the difference between the actual market value of appellant's property considered as a whole at the date of the trial before the severance of the property condemned and the actual market value of the remainder of the property after the appropriation of that part condemned.

Title to the land taken passes to the State.

As far as practicable the compensation to which appellant is entitled must be assessed separately for the 21.88 acres actually taken and for the damages by reason of the severance to that which is not taken and the title to which remains in the appellant.

The north side of the farm is bounded by the G. N. Railroad highway. The proposed highway runs in an easterly-westerly direction south of the railroad and nearly parallel therewith so that the remaining parcel between the railroad and the highway consists of an oblong square, more particularly described as in the form of an irregular parallelogram, the length of which equals the width of the farm and the width of which is 115½ rods at the east end, 150 rods at the center and 137 rods at the west end, such remaining north parcel containing about 216 acres.

The remaining parcel south of the highway consists of a parcel in the form of a somewhat irregular truncated triangle bounded on the north by the highway and on the east, west and south by the boundaries of the farm and this south parcel containing about 48 acres. . . .

The estimate of the market value by the witnesses was largely based on an acreage value and ranged all the way from $30.00 an acre by appellant's witnesses and by one witness as high as $35.00 an acre, down to $20.00 an acre and even less by respondent's witnesses. The actual market value of the farm as a unit before and after the taking was apparently between the extremes testified to and taking into consideration all of the circumstances and the recognized fact that the money market is

easy and the farm land market is active, all of which tended to increase the market value of farm lands in Benson County at the time of the trial, it is the opinion of the Court and the Court finds that the value of the farm in question at the time of trial before the taking was $27.00 an acre.

Accordingly the Court finds that the (value of the) 286.57 acre farm involved before the taking was $7737.39.

That the value of the 21.88 acres taken was $590.76.

It is stipulated that there is 1½ miles of three wire fence involved for which the Commissioners allowed appellant at the rate of $125.00 per mile, in all $187.50. . . .

The Court also finds that the value of the 264.69 acres remaining is damaged to the extent of $7.00 an acre, making its value after the taking $20.00 an acre, so that the Court finds that the farm unit after the taking is $5293.80, or, in other words, that the damage to the remainder is $2443.59.

Accordingly the Court finds that the compensation to which appellant is entitled and for which he may have damages is as follows:

| | |
|---|---|
| Value of the 21.88 acres taken | $590.76 |
| Value of the fence | 187.50 |
| Damages to the remaining farm as a unit | 2443.59 |
| Total Compensation | $3221.85" |

Thereafter the trial court made findings of fact and conclusions of law in conformity with the memorandum decision. In its findings the court found as follows:

### V.

"The Court finds that the market value of the 286.57 acre farm involved before the taking was $7737.39.

### VI.

The value of the 21.88 acres taken was $590.76

### VII.

The Court also finds that the value of the 264.69 acres remaining is damaged to the extent of $7.00 an acre, making its

value after the taking $20.00 an acre, so that the Court finds that the market value of the farm unit after the taking is $5293.80, or, in other words, that the damage to the remainder is $2443.59.

## VIII.

The Court finds that the compensation to which appellant is entitled and for which he may have damages is as follows:

| | |
|---|---|
| Value of the 21.88 acres taken | $590.76 |
| Value of the fence | 187.50 |
| Damages to the remaining farm as a unit | 2443.59 |
| Total Compensation | $3221.85" |

Judgment was entered accordingly and defendants have appealed and demand a trial anew in this court.

The Constitution of this state provides:—

"Private property shall not be taken or damaged for public use without just compensation having been first made to, or paid into court for the owner, and no right of way shall be appropriated to the use of any corporation, other than municipal, until full compensation therefor be first made in money or ascertained and paid into court for the owner, irrespective of any benefit from any improvement proposed by such corporation, which compensation shall be ascertained by a jury, unless a jury be waived." ND Const § 14.

The legislature has prescribed the following measure of damages in cases where private property is taken or damaged for public use:

"1. The value of the property sought to be condemned and all improvements thereon pertaining to the realty and of each and every separate estate or interest therein. If it consists of different parcels, the value of each parcel and each estate and interest therein shall be separately assessed;

"2. If the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned and the construction of the improvement in the manner proposed by the plaintiff;

"3. If the property, though no part thereof is taken, will be damaged by the construction of the proposed improvement, the amount of such damages;

"4. If the property is taken or damaged by the state or a public corporation, separately, how much the portion not sought to be condemned and each estate or interest therein will be benefited, if at all, by the construction of the improvement proposed by the plaintiff, and if the benefit shall be equal to the damages assessed under subsections 2 and 3, the owner of the parcel shall be allowed no compensation except the value of the portion taken, but if the benefit shall be less than the damages so assessed the former shall be deducted from the latter and the remainder shall be the only damages allowed in addition to the value of the portion taken;

"5. As far as practicable, compensation must be assessed separately for property actually taken and for damages to that which is not taken." ND Rev Code 1943, § 32–1522.

In this case the property sought to be taken for public use "constitutes only a part of a larger parcel," and under the above quoted statutory provisions the owner is entitled to be paid the value of the parcel of land taken plus the damages which will accrue to the remainder of the farm by reason of its severance from the portion taken and the construction of the highway in the manner proposed.

There is some contention that the remainder of the farm was benefited by the highway improvement and that these benefits should be taken into consideration and deducted in assessing consequential damages. It will be noted that neither the Board of County Commissioners nor the district court made any finding that the remainder of the farm will receive benefits from the improvement, to be deducted from the damages caused by the severance; and according to the evidence there are no benefits, special or local, or which will result directly and peculiarly to this particular farm. The only benefits which can or will accrue to the remainder of the farm or which the owner can or will receive from the highway improvement are such general benefits as will accrue to and be received by the whole commu-

nity and will flow to the public in general, and these may not be deducted from the consequential damages. 2 Lewis, Eminent Domain, 3d ed, pp 1213, 1217; Roberts v. Brown County, 21 Kan 247; State ex rel. Youngquist v. Anderson, 176 Minn 525, 223 NW 923; Prudential Ins. Co. v. Central Nebraska Pub. Power & Irrig. Dist. 139 Neb 114, 296 NW 752; Mississippi County v. Byrd, 319 Mo 697, 4 SW2d 810; Gallatin Valley Electric R. Co. v. Neible, 57 Mont 27, 186 P 689; 21 CJS p 1064.

The value of land taken and the damages to the remainder of the farm caused by the severance are not generally "susceptible of precise proof and can only be approximately shown by the opinions of witnesses having the requisite information." 4 Sutherland, Damages, 4th ed, p 4130. See also 2 Lewis, Eminent Domain, 3d ed, pp 1118 et seq. And so in this case the testimony with respect to the value of the parcel taken and the damages resulting to the remainder of the tract by reason of the taking of the parcel sought to be taken and the construction of the highway thereon as proposed consists of opinion evidence given by thirteen different persons. Naturally, there was a divergence in the opinions. No two witnesses had the same qualifications or exactly the same opinions as to values.

There was a wide divergence of opinion as to values, even between the witnesses called in behalf of the same party. Thus, one of the witnesses called by the state highway commissioner was a member of the Board of County Commissioners which made the award from which the appeal was taken. He gave it as his opinion that before the strip of land was taken and the highway constructed, the land aside from the buildings had a value of $20.00 an acre; that the buildings had a value of $2500.-00; and that including the buildings the farm before the highway went through had a value of $8220.00. Another witness who was called by the state highway commissioner testified that he had served as assessor in the township in which the land is located for some 28 years and that in the last assessment he assessed the land at $18.88 an acre. He gave it as his opinion, however, that the land aside from the buildings was worth not in excess of $15.00 an acre. With respect to the buildings he

stated "it is a pretty good set of buildings. Of course they are all old buildings. . . . If you should replace those buildings today they would cost a lot of money. The actual value I don't think could be more—probably around $3000.00, it would cost a whole lot more than that to replace them if you had to replace them."

Among the witnesses called by the administrator of the Jacobson estate was the Secretary of the National Farm Loan Association operating in that territory. He testified that he had served as such Secretary-treasurer for the past six years and during that time had sold some 100 farms in Ramsey County and 35 or 40 farms in Benson County. He testified as to his familiarity with the farm in question here; that he had examined the buildings on it and gave rather an extended description of the buildings. He gave it as his opinion that the farm, before the parcel was taken for highway right of way, was conservatively worth $30.00 an acre.

On the question as to the amount of damages which will accrue to the portion of the farm not taken, by reason of the severance, there seems to be even greater diversity of opinion among the witnesses than there is on the question of the value of the farm before the severance. According to some of the witnesses such damages are considerably in excess of the amount allowed by the trial court, and according to other witnesses they are considerably less. No good purpose would be subserved by attempting to detail the testimony of the various witnesses. As shown by the memorandum decision the trial court considered and weighed the testimony of all the witnesses. The record shows that from time to time the trial judge made pertinent inquiries of witnesses. The trial court heard and saw the witnesses and the findings of fact were clearly the result of the deliberate weighing of the evidence, and such findings are entitled to appreciable weight. Re Thoreson, 72 ND 101, 4 NW2d 822.

In assessment of damages the trial court followed the same pattern or itemization that had been used by the Board of County Commissioners and found the amount of damages un-

der three heads: (1) The value of the lands taken; (2) Value of fence; and, (3) Amount of damages to the residue of the lands. With respect to the amount of damages for which the owner of the land was entitled to be compensated under each of these heads the court found as follows:—

(1) The value of the lands taken—$590.76.

(2) The value of the fence—$187.50.

(3) That "the value of the 264.69 acres remaining is damaged to the extent of $7.00 an acre."

We find no reason for disturbing these findings. They are in accord with the weight of the evidence. It is apparent, however, that an error was made in computing the amount of the consequential damages. The remainder of the farm was 264.69 acres, this being damaged $7.00 an acre, such consequential damages would amount to seven times 264.69, or $1852.83 and not to $2443.59 as entered in the judgment.

Appellants' counsel contends that in arriving at the value of the farm before the taking only the value of the land should have been considered, and that no consideration should have been given to the buildings thereon. He says "the value of the lands and the value of the buildings on the farm are two separate and distinct factors," and in fixing the value of the property before the taking, the value of the land alone should have been considered. This contention cannot be sustained. "Ordinarily buildings are part of the land and when land is taken for a public use the buildings and structures thereon are taken with it and the whole must be paid for." 2 Lewis, Eminent Domain, 3d ed, p 1269. "Land and buildings upon it constitute but one piece of property and benefits and damages are to be ascertained by ascertaining the effect upon it as a whole." 4 Sutherland, Damages, 4th ed, p 4129.

In this case it is not a question of temporary structures or buildings that recently had been moved on the premises. The farm had been established for a long time. The evidence shows there was a full set of farm buildings which had been constructed and had remained in their present location for a number of years; that additions had been made to some of these struc-

tures; that trees had been planted, and that a grove was growing adjacent to the buildings. The farm was established and had been maintained and operated as a single unit. The buildings are undeniably a part of the realty. The owner of the farm is entitled to be paid the value of the parcel of property which is taken and he is entitled to be paid the damages to the remainder of the farm that was not taken which result from the taking of the parcel and the construction thereon of the proposed highway. The parcel so remaining consists not only of the land but of the buildings thereon which are a part of the realty.

Appellants also contend that there is no evidence with respect to the value of the fence for which an allowance was made. The record discloses that no such point was made in the trial court; and it was specifically stipulated that the county commissioners had made an allowance of $125.00 per mile for $1\frac{1}{2}$ miles of three-wire fence, or a total of $187.50 for the fence. No attack was made on the correctness of this allowance by either of the parties, and the only reasonable inference is that this allowance was conceded to be correct. As has been said, the trial court in fixing values and the amount of compensation to be paid followed the pattern set by the Board of County Commissioners and considered the allowances to be made under three separate heads. It is true the allowance for the fence might have been considered as an element affecting the damage resulting to the remainder by reason of the taking of the parcel and the severance of the same from the remainder rather than as an independent and separate item for award; but the result would have been the same and no prejudice could result from the method adopted. As said, no objection was raised in the trial court by either party to the method adopted. As the case was submitted, the trial court was amply justified in assuming that the finding and award of the county commissioners as to the value of the fence was satisfactory to both sides. Appellants have no ground for complaint of the trial court's action as respects this item.

It follows from what has been said that the judgment must be modified by reducing the amount of consequential damages

from $2443.59 to $1852.83, which in turn will result in reducing the total amount of damages from $3221.85 to $2631.09.

There are two other particulars in which the judgment must be modified:—

Judgment was rendered against the state highway commissioner and the members of the Board of County Commissioners of Benson County. This is incorrect. Under the law the Board of County Commissioners constituted a statutory tribunal charged with the duty, on the petition of the state highway commissioner, to ascertain and determine the damages resulting from the taking of land for highway purposes and making award for such damages. It becomes the duty of the state highway commissioner to "pay, or cause to be paid from the state highway fund, into court for the benefit of the owners of land to whom such awards have been made, by depositing with the clerk of court of such county cash in the amount of such award or awards." ND Rev Code 1943, § 24–0120. The decision of the Board of County Commissioners is subject to appeal. Either the state highway commissioner or the owner of the land or other person having an estate or interest therein affected by the award may take an appeal. ND Rev Code 1943, § 24–0123. But the members of the Board of County Commissioners are not proper parties respondent on an appeal from their decision and judgment may not be rendered against them.

The judgment in this case made no allowance for interest. "Where, as here, property is taken or damaged for a public use without just compensation having been first made, payment is legally due the owner as of the date of the taking or damaging of the property, and hence interest should be given from the date when the property is taken or damaged." Donaldson v. Bismarck, 71 ND 592, 605, 3 NW2d 808, 815.

The district court is therefore directed to vacate its former judgment and to enter a new judgment conformable to this opinion.

BURR, NUESSLE, BURKE and MORRIS, JJ., concur.