STATE HIGHWAY COMMISSIONER *v.* FEGIN.

1. EMINENT DOMAIN—AWARD—TAKING OF MATERIALS.
   Award for condemnation of right of entry and of materials for
   use in highway construction *held,* not a condemnation of entire
   property and award extends to the value of materials taken
   (CL 1948, § 213.171 *et seq.,* as amended).

2. SAME—TAKING OF FEE ESTATE—MEASURE OF DAMAGES.
   Damages for condemnation of fee or right-of-way are measured
   by the difference in value of land before and after the taking.

3. SAME—CONDEMNATION OF MINERALS—MEASURE OF DAMAGES.
   Damages for condemnation of right to remove minerals is meas-
   ured by their value in place.

4. SAME—MARKET PRICE OF MINERALS TAKEN—OCCASIONAL LOCAL
   DEMAND.
   Occasional local demand for minerals from contractors and county
   road commission is sufficient to establish a general market
   price in the area even though there is no commercial exploita-
   tion of the materials.

5. SAME—PROFIT A PRENDRE—FILL DIRT—DAMAGES—EVIDENCE.
   An award for fill dirt taken for highway construction from de-
   fendant's land was the taking of a *profit à pendre* and where
   the amount was within the range of the evidence, it was prop-
   erly confirmed (CL 1948, § 213.171 *et seq.*).

Appeal from Chippewa; Baldwin (George S.), J.
Submitted Division 3 December 8, 1965, at Grand

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 18 Am Jur, Eminent Domain §§ 57, 82.
[2] 18 Am Jur, Eminent Domain § 240 *et seq.*
[3–5] 18 Am Jur, Eminent Domain § 242.
Determination in eminent domain proceedings of market value of
land as affected by mineral deposits or similar conditions. 156
ALR 1416.

Rapids. (Docket No. 895.) Decided April 12, 1966. Rehearing denied May 27, 1966. Leave to appeal denied by Supreme Court August 26, 1966. See 378 Mich 728.

Condemnation proceedings by John C. Mackie, as State Highway Commissioner, for right to enter and remove rock, sand, and gravel from land owned by Andrew Fegin. Defendant moved to confirm determination of commissioners as to damages. Award confirmed. Plaintiff appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Louis J. Caruso* and *Donald K. Golais,* Assistant Attorneys General, for plaintiff.

*Coates & Kline* (*C. W. Coates,* of counsel), for defendant.

T. G. KAVANAGH, J. This appeal arises out of proceedings in eminent domain, instituted by appellant pursuant to PA 1925, No 352 (CL 1948, § 213.171 *et seq.,* as amended [Stat Ann 1958 Rev and Stat Ann 1965 Cum Supp § 8.171 *et seq.*]), for the proposed improvement of State trunkline highway I–75 in Chippewa county. The court commissioners, appointed by the court, made an award in the amount of $6,475 for the taking. The circuit court confirmed said award, from which appellant takes this appeal.

Appellee owned a parcel containing 72.94 acres of land located approximately one-half mile west of highway US–2 in Chippewa county. By determination of necessity dated May 22, 1962, appellant took 18.1 acres thereof. The proceedings involved the taking of:

"The right to enter upon and occupy with the necessary machinery and equipment the hereinafter described lands and to take and remove therefrom

rock, sand, gravel, and/or earth in any quantity for highway construction purposes, and to store and stockpile highway material thereon, which right shall expire upon the completion of the construction of the proposed project: * * * (Description) * * * The lands described above for borrow purposes contain an area of 18.1 acres, more or less."

Appellee's lands are not contiguous to highway I–75 and no use thereof was required for right-of-way purposes. It was stipulated that approximately 393,000 cubic yards of dirt were removed from said parcel of land.

Earl Closser, expert real-estate appraiser, was called as a witness on behalf of the appellant and testified that the highest and best use of the property was for farming and, particularly, for the growing of hay and the pasturage of cattle. He testified that, in his opinion, the 72.94 acres (considered as an 80-acre tract, less the railroad right-of-way) had a value before the taking of $3,600. He also testified that, in his opinion, the value of the remaining lands, after the taking of the 18.1 acres was $2,600. He further stated that, in his opinion, the portion taken had no after-value and that, in effect, he considered it as a taking in fee. The difference in the value was thus $1,000 which, in his opinion, was the amount of the damages sustained by the appellee. Mr. Closser based his opinion of values upon three sales of comparable properties and the offering for sale of two others.

Millar Fleming was called as a witness on behalf of the appellant and testified that the purpose for the taking of appellee's lands was for the removal of borrow earth material in the amount of approximately 393,000 cubic yards. Mr. Fleming stated that the sand was a porous-A material of well-drained quality, suitable for a road base under the gravel course and concrete. He further stated that

the fill sand from this area would be utilized within a range of two miles from the subject premises.

Appellee introduced exhibits which indicated acquisition of fill material from the department of conservation for a "3¢ exchange credit", and from the "Lawrence girls" for the sum of 3¢ per cubic yard for all sand and 10¢ per cubic yard for all gravel.

Earl Worthy, called as a witness on behalf of appellee, testified that the market price for the type of sand here involved was 3¢ per yard and up.  He said that the highest and best use of this land was for fill sand.  He estimated the value to be 3¢ per yard for what was taken.  He said the property had a market value for farming of $3,000 for 74 acres. He said that the highway construction gave the added value to the land.

The trial court's opinion indicated that the proceedings here amounted to a taking of personal property and that the appellant should pay the value of the materials as merchandise.

Stripped of the legal niceties urged in the briefs the case presents a forthright question:

"When proceedings are brought to condemn the right to remove materials for use in the construction of a highway is the proper measure of damages the value of the materials taken as such or the value of the land before and after the taking?"

The appellant's arguments are persuasive and his conclusions consistent with the cases cited to support them, but not directly in point.

We agree that the subject matter of this proceeding is an interest in land—a *profit à prendre* no less, but to say this is not to agree that all interests in land are measured by the same yardstick.

We think the supreme court of North Dakota has stated the correct rule for distinguishing among the

various types of condemnation proceedings where
it says in the case of *Sheridan County* v. *Davis*
(1932), 61 ND 744 (240 NW 867), at page 751:

"The power of eminent domain is not so circum-
scribed that its exercise for a limited public purpose
must include a taking of the fee of that portion of
real property affected by the use. The power itself
extends to private property of every kind, to land,
timber, stone, gravel, water, and water rights. In
short, there is no species of property, nor any kind
of property rights, which may not be seized under
the right of eminent domain. See 1 Elliott, Roads
and Streets (4th ed), § 239. Our statute* seems to
have been drawn in recognition of this principle, for
it authorizes the taking of the fee where a permanent
use is to be subserved, an easement where that will
suffice, and a right of entry and occupation where
only materials are to be taken.

"From this it follows that the damages recover-
able consist of the value of the right condemned and
of the incidental damages to the freehold and to the
land not directly affected by the right condemned."

Contrary to the view expressed by the appellee
here that under CL 1948, § 213.171, subd (b) (Stat
Ann 1958 Rev § 8.171, subd [b]) the highway depart-
ment must condemn materials as personalty, we
believe the other subsections of that statute when
read in conjunction with CL 1948, § 225.2b (Stat
Ann 1958 Rev § 9.204) give our statute the same
effect as that indicated for the North Dakota stat-
ute; *viz*, "to take a fee, or easement, or right of entry
and occupation to remove materials."

In the case at bar as in *Sheridan, supra,* the same
arguments were advanced. We think the correct
rule implicit in the court's further language there
(page 752):

* North Dakota Compiled Laws of 1913 and 1915 Supp §§ 8203,
8204.—REPORTER.

"The case was tried, over the objection of the defendant, on the theory that the damages were to be assessed according to the value of the land taken, rather than according to the value of the right of entry and occupation for the purpose of removing the gravel. It is true that some evidence was permitted to be introduced tending to show the number of yards of gravel in the parcel in question and the value per yard. On the other hand, there was considerable evidence on behalf of the plaintiff of the value of the land per acre, but both the rulings of the court and the instructions to the jury were such as to readily convey the impression that the value per acre with damages to the part not taken was the true criterion. For instance, after directing the jury to determine the damages accruing to the portion of the land not sought to be taken and to consider the benefits, if any, to such land, they were directed to add such damages, if any, to 'the reasonable market value of the portion and parcel of land actually taken and occupied and appropriated for the purpose of the gravel pit in question.' They were directed to 'consider the difference between the market value of the entire tract before the taking and appropriation, and the market value of what is left after the taking * * * that the market value is not to be determined by the value of the strip in question, to the county by reason alone of its necessity of acquiring it; nor of its peculiar value to the defendants, the owners. These considerations must in no way be allowed to affect the determination by the jury of the value of the whole property or the strip of land sought to be appropriated by the plaintiff county, in this proceeding.' In view of the character of the only right which the county is permitted to condemn, we are of the opinion that the evidence should have had a more direct bearing upon the quantity and the value of the gravel in its natural bed and that the court should have instructed more with reference to that value than to the market value of the land itself."

This reasoning is also followed by the New Mexico supreme court in *Board of County Commissioners of Roosevelt County* v. *Good* (1940), 44 NM 495 (105 P2d 470). There the proceedings were brought to condemn certain of appellant's lands for the purpose of securing rock, sand, gravel, and *caliche* for use upon a public highway and the court said at page 499:

"Appellant had the right to have the jury hear the evidence and determine the actual market value of the *caliche* rock taken from his land, without reference to the value of the land itself. 'The inquiry in such cases must be what is the property worth in the market.'"

Accord 4 Nichols, Eminent Domain (3d ed), § 13.22 (1), p 422:

"The second exception to the general rule is applied where the mineral deposit itself is the subject of the condemnation. In such case the deposit is treated as so much merchandise rather than as land. The rule applicable to personal property is invoked and the condemnor is liable for the market value of the mineral deposit as separately evaluated."

We think the correct rule regarding condemnation of land containing valuable mineral deposits may be summed up as follows:

If a fee or a right-of-way is condemned the before and after value of the land measures the damage and mineral deposits may be shown to affect its value per acre. 29A CJS, Eminent Domain, § 174, p 735 *et seq.*, 156 ALR 1416 *et seq.*

If the right to remove minerals is condemned their value in place must be established to fix the damage, *ibid.*

We do not believe it is necessary to establish that a market exists warranting commercial exploitation of the materials. We deem it sufficient to say that

if occasional demand from the contractors, and county road commission has established a general price in the area, there is a market apart from that created by the project itself.

The appellee's appraiser testified that from both open pits and from pits they opened up whoever bought sand in this area paid 3¢ per yard and up. This is enough.

The award here of $6,475 is within the range of evidence and accordingly should be affirmed. *State Highway Commission* v. *Schultz* (1963), 370 Mich 78.

Affirmed, with costs to appellee.

FITZGERALD, P. J., and HOLBROOK, J., concurred.