THE DEPARTMENT OF TRANSPORTATION, Petitioner-Appellant, *v.*
TOLEDO, PEORIA & WESTERN RAILROAD COMPANY, Respondent-
Appellee.

Third District   No. 77-305

Opinion filed May 15, 1978.

William J. Scott, Attorney General, of Springfield (Roy E. Frazier, Jr., and Tim Swain, II, Assistant Attorneys General, of counsel), for appellant.

David B. Mueller, of Cassidy, Cassidy, Mueller & Price, of Peoria, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an interlocutory appeal from the Circuit Court of Peoria County. The purpose of this appeal is to determine certain evidentiary matters which are to be introduced at a subsequent trial to determine just compensation for the taking of property by eminent domain.

On June 17, 1971, the Department of Public Works and Buildings of the State of Illinois (hereinafter called the State) filed a petition for condemnation against the Toledo, Peoria & Western Railroad (hereinafter called the Railroad) and thereby sought to remove material for a period of three years from a 50-acre tract belonging to the Railroad. On August 31, 1971, leave was granted to file an amended petition for condemnation which sought fee title to 42.6 acres. The land involved is located beneath the Illinois River. The material to be taken would be used

in the construction of Interstate Highway 474. It must be clearly understood that the land sought will not be used for classic road building purposes, but rather minerals will be removed from the land and used in the road construction.

On December 28 and 29, 1971, a hearing was held on the vesting of title pursuant to section 2.1 of the Eminent Domain Act (Ill. Rev. Stat. 1977, ch. 47, par. 2.1). The trial court found that the eminent domain procedure was proper and that the preliminary just compensation was $100,000. The required amount was deposited and on April 25, 1972, title to the 42.6-acre parcel was vested in the State. The State has already begun to remove fill material.

On July 11, 1975, the State filed a motion in limine seeking to exclude certain evidence from trial: (a) regarding the cubic yards of fill already taken in connection with the Interstate 474, and (b) regarding a prior sale to a contractor in connection with Interstate 474.

The matter was then set for trial.

The Railroad filed a motion for partial summary judgment and also opposed the motion in limine. On May 9, 1977, the trial court denied the motion for partial summary judgment and the motion in limine. The trial court found: (a) the proper measure of damages to be submitted to the jury is the value of the land including the mineral content thereof; (b) the jury is entitled to know that the sole purpose of acquiring the land was to obtain the minerals; (c) there had previously been a contract arrived at in an arm's length transaction with a subcontractor for these materials to be used for this purpose a short period prior to filing of the petition.

This last part of the order is in dispute.

On June 29, 1977, an order was entered certifying questions for interlocutory appeal.

The first issue presented on appeal is whether the value of the fill material to be extracted should be a consideration in arriving at the fair cash market value of the land taken.

The State argues that land must be valued as a whole and not as the sum of its parts. It also argues that any mineral content on the land cannot be valued separate from the land, but must be considered as part of the value of the land. Therefore, the value of fill material to be extracted from the land should not be considered in determining the fair cash market value of the land.

The Railroad argues that while the State is correct when speaking of land per se, other rules must apply for the taking of fungible property.

The land sought here is not land in the usual sense. It is part of the bed of the Illinois River. The Railroad is not using the land as part of its roadbed, for a switch yard, terminal, or other structure, or for income

purposes. The Railroad argues that the minerals deposited by the river on that part of the river bed may be extracted and used as levee materials in developing an industrial park along the rail line. The record does not show that this is presently being done.

The Railroad further argues that if the taking of the land for the minerals was the only purpose of the taking and the sole reason for the taking was the economic advantage to be gained thereby, then the minerals should be valued separately from the land because the State does not want the land and considers it incidental to the minerals.

■■■ We believe the correct rule to be that land is to be valued as a whole for its highest and best use and that land includes all the minerals, improvements and appurtenances connected with the land. The proper measure of the value of land is its fair cash market value. (*Department of Public Works & Buildings v. Oberlaender* (1969), 42 Ill. 2d 410, 247 N.E.2d 888; *City of Chicago v. Central National Bank* (1955), 5 Ill. 2d 164, 125 N.E.2d 94.) No factor connected with the land is to be valued separately. *Department of Public Works & Buildings v. Oberlaender* (1969), 42 Ill. 2d 410, 247 N.E.2d 888; *Forest Preserve District v. Caraher* (1921), 299 Ill. 11, 132 N.E. 211; *Department of Public Works & Buildings v. Lotta* (1963), 27 Ill. 2d 455, 189 N.E.2d 238.

We have carefully reviewed the Railroad's argument that the State seeks to condemn personalty rather than realty and therefore a different rule should apply. The Railroad has proffered several cases as authority for its position: *Mackie v. Fegin* (1966), 2 Mich. App. 698, 141 N.W.2d 312; *Board of County Commissioners v. Good* (1940), 44 N.M. 495, 105 P.2d 470; *Michigan State Highway Com. v. McLaughlin* (1969), 16 Mich. App. 22, 167 N.W.2d 468; *Board of County Commissioners v. Vargus* (1966), 76 N.M. 369, 415 P. 2d 57; *Michigan State Highway Com. v. Hahn* (1966), 4 Mich. App. 225, 144 N.W.2d 643. These cases hold that when minerals are condemned in place, a per unit valuation (number of units multiplied by price per unit, *i.e.*, 50 cu. yd. x 3¢) is proper in fixing damage.

The Michigan cases are based in part on a Michigan statute (Mich. Comp. Laws §213.171(b) (1948) (Mich. Stat. Ann. §8.171(b) (1958))), which requires that the highway department must condemn materials as personalty. (*Mackie v. Fegin* (1966), 2 Mich. App. 698, 141 N.W.2d 312.) The Michigan Court of Appeals in the *Mackie* case read that section of the statute in conjunction with other sections and found that the highway department could take whatever interest best suited its purpose. In the Michigan cases cited, that interest was in land and not in personalty. Thus consideration of minerals as personalty is not the established rule in Michigan.

The New Mexico cases do adopt a per unit valuation rule. However, that rule has not been followed in other States and we find no compelling reason to follow that rule in Illinois.

We believe that a per unit valuation in Illinois would confuse the jury. It would result in inflated land values and valuation based upon speculation. It would ignore completely the cost factors which are affected by management. It would force consideration of the need of the condemnor rather than the loss of the condemnee. We believe that this is undesirable and therefore we will not adopt the per unit valuation rule in Illinois.

This does not mean, however, that an appraiser cannot consider that minerals exist on the land and that there is a market for those minerals in determining the fair cash market value of the land, as a whole, for its highest and best use. *Department of Public Works & Buildings v. Bohne* (1953), 415 Ill. 253, 113 N.E.2d 319.

Both the State and the Railroad have cited *Department of Public Works & Buildings v. Oberlaender* (1969), 42 Ill. 2d 410, 247 N.E.2d 888. The State argues that this case reaffirms the rule that land must be valued as a whole and that timber, minerals, and other elements are factors to be considered in the value of the land as a whole but may not in themselves be valued separately. The Railroad argues that this case is authority for the separate valuation of minerals when the right to take the minerals is condemned. We have carefully studied the *Oberlaender* case. We are most particularly aware of the factual situation and the reasoning of that decision. We believe that if minerals are being extracted from land as part of a business operation with an established market and a demonstrable cost accounting procedure, there may be some justification for valuing the minerals separate from the land. In every other case, there is no such justification.

■■ We believe the proper rule to be that land is to be valued as a whole including all minerals, timber, improvements and appurtenances. The measure of the value of the land is the fair cash market value for its highest and best use, that is, the amount which a purchaser, willing but not obligated to buy, will pay to a seller, willing but not obliged to sell. The minerals, timber, improvements and appurtenances may be considered as factors in the determination of the fair cash market value, but under no circumstances is the fair cash market value to be the sum of such factors.

The second issue presented on appeal is whether it is improper to consider evidence in establishing market value which is based on the very public improvement for which the condemnation is concerned, even if it is on a "one-time" basis.

The State argues that the market created by the Interstate 474 project should not be considered in determining the fair cash market value of the

land sought. It further argues that the minerals here had not been sold by the Railroad prior to sale to a contractor working on the Interstate 474 project.

The Railroad argues that it had a real need for the minerals for its own purposes in constructing levees to aid in development of an industrial park. It also argues that the condemnation of its land was not contemplated until after purchases had been made from it by contractors using the minerals for the construction of the Interstate 474 and after unsatisfactory bids for more minerals had been received.

■■■ We believe that the rule is well established in Illinois and in other jurisdictions that it is the loss to the condemnee and not the gain to the condemnor which is to be considered in determining the value of condemned lands. (*Peoples Gas Light & Coke Co. v. Buckles* (1962), 24 Ill. 2d 520, 182 N.E.2d 169.) When land is taken as part of a project, any enhancement in the value of that land because of project cannot be considered.

■■ Here, the only true market for the minerals was caused by the need for the minerals in the construction of the Interstate 474 project. The need of the Railroad for the materials did not create a market. Thus, consideration of the market demand created by the contractors herein would be improper.

The third issue presented on appeal is whether the $.12 per cubic yard price which was paid to the Railroad by a contractor working on the Interstate 474 project is admissible.

The State argues that valuation is a matter of judgment based upon the numerous factors dependent upon the type of property sought. The income approach of valuation can be used in special use situations, but there is no special use here.

The Railroad argues that if it is to be allowed to show an existing market for the minerals it must be allowed to show the unit price.

■■ We agree with the State that allowing the Railroad to introduce evidence regarding the unit price would encourage the jury to think that a market for the minerals exists. It would not be a true indication of fair cash market value. Since we are unwilling to adopt the Railroad's theory regarding fair cash market value, we will not permit introduction of the per unit value.

The fourth point raised on appeal is whether the amount of fill removed following the quick-take and prior to trial is relevant and therefore admissible.

The State argues that such introduction invites the jury to multiply the gross amount of fill by the price per cubic yard and thereby arrive at the fair cash market value. This defeats the valuation of land as a whole. This also would lead to speculation and conjecture.

The Railroad argues that while the exact amount of minerals on the land is a matter of opinion, a minimum figure could be determined by establishing the amount already extracted.

■■ ■ We have stated that any valuation based upon speculation is undesirable and improper. The introduction of testimony regarding the minerals already taken is clearly improper. We do not wish to set minimum figures. The proper value of the land is the fair cash market value, no more and no less.

The order of the Circuit Court of Peoria County is reversed and this cause is remanded for continuance of the trial in accordance with the views set forth in this opinion.

Reversed and remanded.

ALLOY, P. J., and STENGEL, J., concur.