Harold S. HULTBERG and Betty L. Hultberg, Plaintiffs and Appellees,

v.

Walter R. HJELLE, North Dakota State Highway Commissioner, Defendant and Appellant.

Civ. No. 9648.

Supreme Court of North Dakota.

Nov. 28, 1979.

Jos. A. Vogel, Jr., Mandan, for plaintiffs and appellees.

Steven L. Latham, Sp. Asst. Atty. Gen., State Highway Dept., Bismarck, for defendant and appellant.

ERICKSTAD, Chief Justice.

The defendant, Walter R. Hjelle, North Dakota State Highway Commissioner [hereinafter referred to as the Commissioner], appeals from a judgment in the amount of $37,898, said amount representing the total compensation awarded the plaintiffs, Harold S. and Betty L. Hultberg [hereinafter referred to as the Hultbergs], for two tracts of land acquired by the state in eminent domain proceedings. We affirm.

The Hultbergs own a farm in McLean County, North Dakota. Pursuant to the provisions of Section 14 of the North Dakota Constitution, and the statutory authority of the Commissioner in Title 24 of the North Dakota Century Code, the Commissioner sought to purchase 18.77 acres of the Hultbergs' land in fee, and .61 acres for a drainage easement, both tracts of land to be used in the reconstruction and improvement of U. S. Highway No. 83. To acquire possession of the land, the Commissioner offered to purchase the two tracts for $15,819.55, and, concomitant with the filing of the offer to purchase, this amount was deposited with the Clerk of the District Court of McLean County on October 28, 1976, the date of the taking.

On November 8, 1976, and pursuant to Section 24–01–22.1, N.D.C.C.,[1] the Hultbergs appealed to the district court from the deposit made by the Commissioner for the taking of a right of way, asserting that the offer was wholly inadequate and was not representative of the property's current market value. The Hultbergs demanded a jury trial for the purpose of determining a just award of compensation in accordance with Section 32–15–13, N.D.C.C.[2]

Prior to the commencement of the trial, the Commissioner made a motion in limine, requesting that the trial court prohibit the Hultbergs "from introducing any evidence in the presence of the jury which would tend to show the value of coal and gravel deposits on the subject tract as an independent element of value." The trial court denied the motion, and the trial commenced on October 31, 1978.

During the course of the trial, three witnesses gave their opinions as to the value of the land taken, as well as the severance or consequential damages to the land retained by the Hultbergs.

Mr. Hultberg, the owner of the land, estimated that the value of his 674-plus acre farmstead prior to the taking was $674,000, or $1,000 an acre. Mr. Hultberg placed the value of the property after the taking at $584,631, or approximately $893 an acre, with the total damages thus amounting to $89,369, including severance damages.

Mr. D. W. Knudson, after qualifying as an expert, testified on behalf of the Hultbergs, and stated that the highest and best use for the property in question was agricultural and farming, with holdings of min-

1. "24–01–22.1. *Appeal after deposit for taking.*—Within thirty days after notice has been given in writing to the landowner by the clerk of the district court that a deposit has been made for a taking of right of way as authorized by section fourteen of the constitution, the owner of the property taken may appeal to the district court by serving a notice of appeal upon the acquiring agency, and the matter shall be tried at the next regular or special term of court with a jury unless a jury be waived, in the manner prescribed for trials under chapter 32–15."

2. "32–15–13. *Jury may be demanded.*—Whenever in an action brought under the provisions of this chapter an issue is formed whereby it appears that the attendance of a jury will be necessary to assess the damages in such action, the plaintiff therein may apply to the judge of the district court where the same is pending for an order requiring a jury to be summoned to assess the damages in such action. Thereupon the judge shall issue an order to the clerk of said court requiring a jury to be summoned, and in such order shall specify the number of jurors to be drawn, the place where they are to appear, and the time when they shall come, which shall be not less than eight days nor more than thirty days from the date thereof."

erals, coal, and gravel for investment purposes. In determining a fair market value for the entire Hultberg farmstead before the taking, Knudson relied upon nine comparable sales, two of which involved the sale of minerals separate from the surface. He testified that the market value of the 674.14 acre tract of land before the taking was $542,998, or $805 an acre, and the value of the property after the taking was $494,326 or $755 an acre. The difference between the before and after values amounted to $48,672, this amount being Knudson's opinion as to the total damages incurred by the Hultbergs in the taking of their land.

The last witness called at trial was Mr. Donald Doll, the chief appraiser for the North Dakota State Highway Department, who testified on behalf of the Commissioner.

Doll stated that in attempting to reach a figure as to the value of the Hultberg property, he examined approximately twenty-five comparable sales, with particular attention given to nine such sales in reaching a final conclusion. Doll testified that the value of the entire Hultberg farmstead before the taking was $472,832, the values of the acreage differing depending on the location of the land in relation to the City of Coleharbor. Doll estimated that the value of the property after the taking was $456,204, therefore placing the total damage award at $16,628.

On November 2, 1978, the jury returned a verdict in favor of the Hultbergs, awarding them damages in the amount of $37,878. The compensation for the land taken amounted to $11,628, and the compensation for severance damages amounted to $26,250, for a total award of $37,878.

On December 19, 1978, the State filed a motion for a new trial. The reasons assigned for the motion were that the testimony of the Hultbergs' expert witness, D. W. Knudson, was in conflict with the generally accepted appraisal methodology and rules for the admissibility of valuation testimony, and that such testimony had been relied upon by the jury.

The motion for a new trial was denied by the trial court in accordance with its memorandum opinion dated February 16, 1979, and judgment was entered on March 6, 1979. Judgment was for the sum of $37,898, inclusive of the $15,819.55 on deposit, plus interest on the sum of $22,058.45 from October 28, 1976, at the rate of six percent until paid, plus costs and attorneys' fees in the amount of $18,927.83. The Commissioner appeals to this court from that judgment. No issue is raised over the attorneys' fees and costs.

■ Eminent domain is the right to take private property for public use. The law provides that private property shall not be taken or damaged for public use without just compensation first having been made to the owner. The determination of what constitutes just compensation is a question for the jury to resolve, unless the right to a jury is waived. N.D.Const. § 14; § 32–15–01, N.D.C.C. The only function of a jury in eminent domain cases is to assess damages. *City of Minot v. Minot Highway Center, Inc.*, 120 N.W.2d 597 (N.D.1963).

Section 32–15–22, N.D.C.C., defines the forms of compensation to be awarded in eminent domain proceedings, and reads:

"32–15–22. *Assessment of damages.* —The jury, or court, or referee, if a jury is waived, must hear such legal testimony as may be offered by any of the parties to the proceedings and thereupon must ascertain and assess:

1. The value of the property sought to be condemned and all improvements thereon pertaining to the realty and of each and every separate estate or interest therein. If it consists of different parcels, the value of each parcel and each estate and interest therein shall be separately assessed.

2. If the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned and the construction of the improvement in the manner proposed by the plaintiff.

3. If the property, though no part thereof is taken, will be damaged by the construction of the proposed improvement, the amount of such damages.

4. If the property is taken or damaged by the state or a public corporation, separately, how much the portion not sought to be condemned and each estate or interest therein will be benefited, if at all, by the construction of the improvement proposed by the plaintiff, and if the benefit shall be equal to the damages assessed under subsections 2 and 3, the owner of the parcel shall be allowed no compensation except the value of the portion taken, but if the benefit shall be less than the damages so assessed, the former shall be deducted from the latter and the remainder shall be the only damages allowed in addition to the value of the portion taken.

5. As far as practicable, compensation must be assessed separately for property actually taken and for damages to that which is not taken."

■ Compensation for property actually taken for public purposes, and damages for property not taken but injuriously affected, must be ascertained and assessed pursuant to the provisions of this section. *Little v. Burleigh County*, 82 N.W.2d 603 (N.D.1957).

■ In proceedings to determine damages sustained by the owner of a farm where land is condemned for highway purposes, the landowner is entitled to be paid the value of the land taken plus the damages which accrue to the remainder of the land because of its severance from the part taken and the construction of the highway. *Frederickson v. Hjelle*, 149 N.W.2d 733 (N.D.1967); *Wishek Investment Co. v. McIntosh County*, 77 N.D. 685, 45 N.W.2d 417 (1950); *Lineburg v. Sandven*, 74 N.D. 364, 21 N.W.2d 808 (1946).

■ The general rule for determining the value of property taken pursuant to Section 32–15–22, N.D.C.C., is a consideration of the fair market value of such property. *City of Hazelton v. Daugherty*, 275 N.W.2d 624 (N.D.1979); *Little v. Burleigh County, supra*. The fair market value is to be determined at the date of the taking, which in this instance is October 28, 1976. Section 32–15–23, N.D.C.C.

This court has defined fair market value in eminent domain cases as the highest price for which property can be sold in the open market by a willing seller to a willing purchaser, neither acting under compulsion and both exercising reasonable judgment. *City of Hazelton v. Daugherty, supra; Minot Sand & Gravel Co. v. Hjelle*, 231 N.W.2d 716 (N.D.1975); *See* § 24–01–01.1(23), N.D. C.C.

This court has also said that an award in a condemnation case will be sustained if it is within the limits of the damages testified to by the witnesses. *State v. Livingston*, 270 N.W.2d 556 (N.D.1978).

With these considerations in mind, it becomes necessary to examine the record to determine if error was committed in placing a fair market value on the Hultberg property acquired by the Commissioner under the "quick-take" provisions of our Constitution.

Plaintiff's exhibit No. 15, offered and received into evidence without objection, reveals the basis for Knudson's opinion pertaining to the before and after values of the Hultberg property, as well as a breakdown of the damages:

Before Value

674.14 acres at $805/acre, for a total of $542,998.

| | |
|---|---|
| 674.14 acres of land at $600/acre | $404,484 |
| 40.00 acres of coal at $300/acre | 12,264 |
| 76.25 acres of gravel at $1,000/acre | 76,250 |
| Building Contribution | 50,000 |
| TOTAL BEFORE VALUE | $542,998 |

After Value

654.76 acres at $755/acre, for a total of $494,326.

| | |
|---|---|
| 654.76 acres of land at $587/acre | $384,326 |
| 60.00 acres of gravel at $1,000/acre | 60,000 |
| Building Contribution | 50,000 |
| TOTAL AFTER VALUE | $494,326 |

Breakdown of the Damages

Taking:

| | | |
|---|---|---|
| 18.77 acres of land at $600/acre | $11,262 | |
| .61 acres of land at $600/acre (easement) | 366 | |
| 13.15 acres of gravel at $1,000/acre | 13,150 | |
| 19.38 acres of coal at $300/acre | 5,814 | |
| Total Taking | | $ 30,592 |

Severance:

| | | |
|---|---|---|
| 9.56 acres of land at $400/acre | $ 3,824 | |
| 47.06 acres of land at $100/acre | 4,706 | |
| 21.50 acres of coal at $300/acre | 6,450 | |
| 3.10 acres of gravel at $1,000/acre | 3,100 | |
| Total Severance | | $ 18,080 |

| | |
|---|---|
| TOTAL DAMAGES DUE TO THE TAKING PLUS SEVERANCE | $ 48,672 |

■ The issue on appeal is whether or not the trial court erred in allowing the expert witness, testifying on behalf of the Hultbergs, to separately establish values for the coal, gravel, and surface land, and then to aggregate these sums to reach a total figure representative of the fair market value. The Commissioner contends that it is improper for the landowner to have the surface value of the land and the value of the underlying minerals aggregated to determine the fair market value of the land. We agree.

■ In determining the just compensation due in eminent domain proceedings, it is well established that the existence of valuable mineral deposits constitutes an element to be considered insofar as it influences the market value of the land. *Montana R. Co. v. Warren*, 137 U.S. 348, 11 S.Ct. 96, 34 L.Ed. 681 (1890); *U. S. v. 91.90 Acres of Land, etc.*, 586 F.2d 79 (8th Cir. 1978), *cert. den.* 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045 (1979); *Dept. of Transportation v. Toledo, Peoria & Western Railroad Co.*, 59 Ill.App.3d 886, 17 Ill.Dec. 195, 376 N.E.2d 88 (1978); 4 Nichols on Eminent Domain § 13.22 (1978). The rationale being that land is to be valued as a whole, including all minerals, timber, improvements, and appurtenances.

However, it is equally well settled that such deposits cannot be made the subject of a separate evaluation apart from the land where it is contained, with the fair market value of the land and the value of the underlying minerals aggregated to determine the amount of just compensation to be awarded. *U. S. v. 91.90 Acres of Land, etc., supra; Dept. of Transportation v. Toledo, Peoria & Western Railroad Co., supra; Iske v. Omaha Public Power District*, 185 Neb. 724, 178 N.W.2d 633 (1970); *Townsend v. Mid-America Pipeline Co.*, 168 N.W.2d 30 (Iowa 1969); Annot., 156 A.L.R. 1416 (1945); 4 Nichols on Eminent Domain § 13.22 (1978); 1 Orgel, Valuation Under Eminent Domain § 165 (2d ed. 1953); Jahr, Eminent Domain—Valuation and Procedure § 151 (1953); 27 Am.Jur.2d *Eminent Domain* § 290 (1966); 29A C.J.S. *Eminent Domain* § 174 (1965); *See* Annot., 1 A.L.R.2d 878 (1948).

As stated in 4 Nichols on Eminent Domain § 13.22 at pp. 13–126–13–129 (1978):

". . . the rule has been correlatively stated that the value of such mineral deposits cannot be determined independently of the land of which it is a part. It cannot be considered as so much poten-

tial merchandise to be evaluated as such. The land taken must be valued as land, with the factor of mineral deposits given due consideration. In determining just compensation to be paid to the owner, it is not permissible to aggregate the value of the land and value of the deposit. Thus, the value as stone land for quarrying—but not the value of the stone separate from the land—is a proper subject of consideration, both by the witnesses and the jury in fixing the amount of just compensation to be awarded."

In Annot., 156 A.L.R. 1416, 1417–18 (1945), the annotator gives the following as the basic rule in condemnation as to valuation of land containing minerals:

"With remarkable unanimity the courts hold that in determining the compensation in eminent domain proceedings for the land to be condemned, the existence of valuable mineral deposits in the land taken constitutes an element which may be taken into consideration if and in so far as it influences the market value of the land. The reason for this rule is that the measure of compensation in eminent domain proceedings is the market value of the land to be condemned as a whole with due consideration of all the components that make for its value. This rule has been expressed in a great number of decisions and has also been recognized by all the leading textwriters on this subject. It has been applied indiscriminately to all forms of mineral deposits, such as limestone, ore, gold, fire clay, coal, sand and gravel, and stone.

"Occasionally the rule has been expressed by the negative statement that the award may not be reached by separately evaluating the land and the deposits, since the latter, being only one element among many in determining the market value of the land, cannot be considered as an independent factor the value of which is to be simply added to the value of the land."

Recently, the United States Court of Appeals of the Eighth Circuit addressed this issue and said:

"The landowner is also entitled to have the fact finder take into consideration all factors of value that would affect the market value of the property. From the landowner's standpoint, a factor of value would be anything that would induce a reasonable seller to demand more for the property and would induce a reasonable buyer to pay more on account of the existence of the value factor.

"It must be kept in mind, however, that the landowner is not entitled to have all factors affecting the value of his property added together and to have the total of the additions taken as the reasonable market value of his land.

. . . . .

"*In the case of land that is underlaid with marketable minerals, including plastic clay, the existence of those minerals is a factor of value to be considered in determining the market value of the property, but the landowner is not entitled to have the surface value of the land and the value of underlying minerals aggregated to determine market value.* The value of the mineral deposit is to be considered only to the extent to which it goes into and affects the over-all market value of the property. And it is generally not permissible to determine the value of a mineral deposit by estimating the number of tons in place and then multiplying the tonnage by a unit price per ton. [Citations omitted.]" [Emphasis added.] *U. S. v. 91.90 Acres of Land, etc.,* 586 F.2d 79 at 87.

The trial court in the instant case also recognized this rule in its memorandum opinion and order dated February 16, 1979, when the court said:

"All can agree with the abstract proposition that land should be valued as a unit. Likewise, all can agree with the abstract proposition that land used for one purpose, such as farmland, may have enhanced value, over and above its value as farmland, because of the existence of mineral deposits. Having once made that concession, one must also concede that it is possible to isolate and identify to what

extent the value of the land has been enhanced by the existence of the mineral deposits. This necessarily involves assigning values to those deposits. . . .

"This is not to say that it is proper for a witness to separately evaluate each deposit and the value of use as farmland and add all these elements together to arrive at a total. The values are all interrelated and are simply taken into consideration as part of the process of arriving at a general overall valuation to be placed on the land as an entity."

█ Plaintiff's exhibit No. 15 indicates that, in reaching a total for the fair market value of the Hultberg property, Knudson separately evaluated the land, the buildings, and the coal and gravel deposits located thereunder, and aggregated these amounts in determining the fair market value of the entire farmstead before the taking. Knudson engaged in the same appraisal methodology in determining a value for the property after the taking as well as a breakdown of the damages incurred. We conclude that the trial court erred in allowing Knudson to present valuation evidence in the manner in which it was done.

In support of their contention that the valuation evidence presented by Knudson was proper, the Hultbergs primarily rely on *United States v. Land In Dry Bed of Rosamond Lake, Cal.*, 143 F.Supp. 314 (S.D.Cal. 1953). This case summarized the law as follows:

"(1) that a landowner in dealing with a parcel of land on which there is a mineral, timber or like substance may not introduce expert testimony by which the expert multiplies the gross material present by the market value per unit thereof and thereby arrives at a figure which purports to be fair market value for the parcel;

"(2) that the landowner may not by expert testimony capitalize the present or future value of a business enterprise and thereby arrive at fair market value; that rental value may, however, be capitalized;

"(3) that the landowner is entitled to have an expert or lay witness describe the commodity or substance on the land, the quantity thereof, the going price thereof as *factors* only, upon which the expert may in part base his value as to the *fair market value* of the parcel in question; that a landowner is not entitled to present testimony as to the fair market value of the mineral or timber or other substance apart from the value of the land. Insofar as *Clark* [*Clark v. United States*, 8 Cir., 155 F.2d 157] *Cade* [*Cade v. United States*, 4 Cir., 213 F.2d 138] and *National Brick* [*National Brick Co. v. United States*, 76 U.S.App.D.C. 329, 131 F.2d 30] cases, supra, may so hold or indicate to the contrary, we find ourselves in disagreement therewith; that if the holding of *National Brick*, supra, is restricted to the portion quoted in this memorandum, which portion is the concluding paragraph of the opinion, we are not in disagreement with *National Brick*. In other words, a clear distinction must be drawn between what is presented and considered as a *factor* underlying the expert's opinion as contrasted with opinion as to the fair market value of the substance, timber or mineral itself, apart from the land.

"(4) that the landowner must make a showing of some sort of market, poor or good, great or small, for the commodity in question before the quantity and price of the commodity or substance may be presented to the jury to be used as a factor in the expert's opinion testimony;

"(5) that since the inquiry is essentially one as to what would have been the negotiations between the willing buyer and the willing seller, there may be taken into consideration by the expert only those *factors* which would have been reasonably so considered;

"(6) that except in cases where the matter is so clear that it becomes a question of law it is generally a question for the jury to determine whether the proposed *factor* underlying in part the opinion of the expert as to the fair market value, is one which would have reason-

ably been considered by the willing buyer and the willing seller; . . ." 143 F.Supp. at 321–22.

It is apparent that the Hultbergs' reliance on this case is misplaced. In *United States v. Land In Dry Bed of Rosamond Lake, Cal., supra* at 317, the court, quoting from *Georgia Kaolin Co. v. United States,* 214 F.2d 284, 286 (5th Cir. 1954), adhered to the well-established rule, previously stated in this opinion, pertaining to the valuation of land containing mineral deposits:

> " 'In eminent domain proceedings, the existence of valuable mineral deposits in the condemned land constitutes an element which may be taken into consideration if and in so far as it influences the market value of the land. The reason for this rule is said to be that the measure of compensation in such cases is the market value of the land to be condemned, taken as a whole and with due consideration of all the components that tend to make its market value. This rule has been applied to limestone deposits, gold ore, fire clay, coal, stone, and sand and gravel, 156 A.L.R. 1416–1417; *but there can be no recovery for both the value of the land and its mineral deposits as two separate items.*' [Citations omitted.]" [Emphasis added.] 143 F.Supp. at 317.

Market value may, of course, be enhanced by the presence of mineral deposits in the land. The existence of known mineral deposits, including coal and gravel, cannot be ignored. The deposits are indeed proper *factors* to be considered in arriving at a true market value of the property in question before the condemnation. However, the law is well-settled that such deposits cannot be made the subject of a separate evaluation, apart from the land where it is contained, and simply added to the market value of the land as additional compensation for the taking. This is what was done by the appraiser for the landowners in the instant case.

Like most farm properties, the Hultbergs' farmstead is composed of different elements. The buildings, the coal and gravel deposits, and the farm land each contribute something to the overall market value of the property. In *Lineburg v. Sandven,* 74 N.D. 364, 21 N.W.2d 808 (1946), a proceeding to condemn a strip of land through a farm for highway purposes, this court approved the form of the assessment of damages made by the board of county commissioners and approved by the lower court, which contained three items, "value of the lands taken," "value of the fence," and "damages to the remaining farm as a unit." In discussing the damages to the remaining land which included buildings, this court, with approval, quoted from 4 Sutherland on Damages, 4th Ed., at 4129 as follows:

> " 'Land and buildings upon it constitute but one piece of property and benefits and damages are to be ascertained by ascertaining the effect upon it as a whole.' " 74 N.D. at 376, 21 N.W.2d at 813.

The unpredictable and speculative nature of anticipated profits or unexpected losses forbids the separate evaluation of mineral deposits and the addition of such values to the market value of the land. Furthermore, it is possible that the development of these deposits, whether it be coal, gravel, clay, stone, or whatever, may be inconsistent with the highest and best use of the land. If such is the case, the deposits may not even be considered. *Arkansas State Highway Comm. v. DeLaughter,* 250 Ark. 990, 468 S.W.2d 242 (1971); 4 Nichols on Eminent Domain § 13.22 at p. 13–125 (1978).

An examination of the record in this case reveals that the Hultbergs' expert witness, D. W. Knudson, did more than merely approach the Hultberg property as a unit, considering the buildings, and the quantity and quality of coal and gravel reserves in place, with the values thereof as factors upon which in part he based his opinion. Instead, the appraisal witness placed separate values on the coal and gravel deposits, the buildings, and the land, and added these separate sums together to reach a total value for the property before and after the taking.

Knudson first testified that the highest and best use for the property taken was agricultural and farming, with holdings for investment purposes of minerals, coal, and gravel. He then described the comparable sales relied upon in forming the basis of his opinion as to the fair market value of the Hultberg property before the taking.

In placing a value of $600 per acre on the Hultberg land before the taking, Knudson had considered nine comparable sales in which the land had sold for a per acreage price of from $385 to $600 per acre, with the $600 per acre sale being an 80-acre tract located approximately six miles southwest of the Hultberg property. Of importance is the fact that of the nine comparable sales of land considered, most of the sales included a transfer of all the mineral rights contained therein, whatever those rights may have been.

Knudson next placed a value of $300 per acre on the 40.88 estimated acres of coal underlying the Hultberg land. In valuing the coal deposit as such, Knudson relied upon two sales in which only the minerals and not the surface were sold.

These two sales involved land near Underwood, North Dakota, and the amount of land in each instance was eighty mineral acres. The two transfers, one from Roland P. Sigurdson to Western Petroleum, and the other from Sigurdson to Westex, granted to the buyer full ingress and egress for the purposes of exploring, mining, and extracting the named minerals, i. e., coal and oil. The mineral sales were for $125 and $281 per acre, respectively. Relying solely on these two mineral sales, Knudson determined that the coal underlying the Hultberg land was worth $300 per acre.

Finally, in the absence of any comparable sales, Knudson arbitrarily assigned a value to the gravel deposits underlying the land of $1,000 per acre. After valuing the buildings at $50,000, Knudson aggregated these

four separate sums to reach a total, representative of the fair market value of the property before the taking, of $542,998. As indicated earlier in this opinion, this appraisal methodology was improper.

■ The existence of coal and gravel deposits on the land are elements or factors to be considered, but only to the extent such deposits influence or enhance the fair market value of the land. The weight of authority in this country supports the rule that an award may not be reached by separately evaluating the land and the mineral deposits to arrive at the value of the land.[3] The land taken must be valued as a whole, with the factor of mineral deposits given due consideration. An exception to this rule occurs where the mineral deposit itself is the subject of the condemnation, for in such cases the deposit is treated as so much merchandise rather than land. *Petition of Mackie,* 2 Mich.App. 698, 141 N.W.2d 312 (1966).

Suffice it to say that the proper inquiry is not the value of the coal deposits or the gravel deposits, but instead, it is the market value of the land considering its enhanced value due to the presence of coal and gravel deposits.

■ However, we find that the error committed by the trial court was harmless error under Rule 61 of the North Dakota Rules of Civil Procedure, in light of the fact that no objection was made to the introduction of plaintiffs' exhibit No. 15 and testimony relative thereto. As indicated earlier herein, the Commissioner made a motion in limine to exclude "any evidence in the presence of the jury which would tend to show the value of coal and gravel deposits on the subject tract as an independent element of value."[4]

The only objection made by counsel for the Commissioner during the trial, with respect to evidence relating to the separate evaluation of the surface land, the build-

---

3. See authority cited at page 453 of this opinion.

4. An objection, when made, notwithstanding that the subject may have been considered generally earlier through a pretrial motion (motion in limine), should be so specific that its meaning is clear to all; accordingly, reliance in civil cases upon a pretrial ruling is discouraged.

ings, and the coal and gravel deposits, occurred when Knudson attempted to testify about two comparable sales in which only the minerals, and not the surface, were sold. At such time, the following colloquy took place:

"MR. PANTALEO: Excuse me, please, Mr. Knudson. Your Honor, in accordance with our discussion in chambers, I will object to any testimony in regard to severed mineral sales.

"THE COURT: It will be understood that you have a standing objection to all of this, Mr. Pantaleo."

We believe that the objection that was made was too indefinite. Testimony relating to comparable sales in which only the minerals, and not the surface land, were sold is not objectionable. What should have been objected to was the introduction of plaintiffs' exhibit No. 15 and testimony relative thereto. However, after Knudson had testified on direct examination, the record indicates the following:

"[Plaintiffs' Exhibit 15 offered and received in evidence, without objection.]

"MR. PANTALEO: Your Honor, may I ask one question of the witness on the basis of the exhibit.

"THE COURT: Yes.

"MR. PANTALEO: That exhibit was prepared by you and reflects the figures you have just testified to; is that correct?

"THE WITNESS: Yes.

"MR. PANTALEO: Okay. Thank you."

For the reasons previously stated, the objection made by counsel for the Commissioner was too indefinite. Furthermore, no objection was ever made directly relating to the introduction of plaintiffs' exhibit No. 15, and it was this exhibit, and testimony relative thereto, which formed the basis for this appeal.

 The jury, in considering the evidence, awarded somewhat less than half the amount sought by the landowner and some $10,000 less than that amount sought by the landowner's expert witness. However, it did award more than twice the amount the Commissioner offered to pay.

The verdict is within the limits of the damages testified to by the witnesses, and, accordingly, under *State v. Livingston, supra,* would be sustainable. We believe that it is consistent with substantial justice, notwithstanding the error in the admission of plaintiffs' exhibit No. 15 and testimony relative thereto. It would be unduly harsh under the circumstances to require the landowner to try this case again. For these reasons, we affirm the judgment of the district court.

VANDE WALLE, PAULSON and SAND, JJ., concur.

PEDERSON, Justice, concurring specially.

I agree with most of what is said by Chief Justice Erickstad and it does not greatly disturb me that a new trial is not awarded. I think that the tactics followed by the Commissioner may very well have been motivated by a desire to establish a legal point. This has been accomplished. In view of the provisions of § 32–15–32, NDCC, requiring the condemnor to bear practically all of the costs, it should not be unduly harsh to require the landowner to try this case again. I would have granted a new trial and let the Commissioner decide whether he would want to take advantage of a new trial at his expense.